**RED BLUFF DRIVE–IN, INC., Etc., et al., Plaintiffs-Appellants,**

v.

**Carol VANCE, Harris County District Attorney, et al., Defendants-Appellees.**

**CRYSTAL THEATER, INC., a Texas Corporation, et al., Plaintiffs-Appellants,**

v.

**Henry WADE, District Attorney for Dallas County, Texas in representative capacity only, et al., Defendants-Appellees.**

Nos. 79–3182, 79–3570.

United States Court of Appeals, Fifth Circuit. Unit A

June 23, 1981.

Marian S. Rosen, Houston, Tex., for Adonis Adult News, et al.

Clyde W. Woody, Houston, Tex., Beverly Hills, Cal., for Academy Theatres, et al.

John H. Weston, principle counsel, David M. Brown and Robert A. De Piano, on the brief, Beverly Hills, Cal., for Starbase Publishing Co.

Mike Aranson, Dallas, Tex., for appellants in 909 Congress Corp. Action.

Arthur M. Schwartz, Denver, Colo., JoAnn Doughtie, Terrence A. Gaiser, Houston, Tex., for 909 Congress Corp. et al.

Clyde F. DeWitt, III, Houston, Tex., for Carol Vance and John Holmes.

Wm. Torrance Fiddes, Jr., Houston, Tex., for H. D. Caldwell and City of Houston.

Joseph G. Werner, Asst. City Atty., Dallas, Tex., for Glen King.

James R. Ansell, Galveston, Tex., for James F. Hury, Jr.

Paul C. Isham, Fort Worth, Tex., for H. F. Hopkins.

Robert C. Story, Bill M. White, Jay R. Miller, San Antonio, Tex., for Bill M. White.

Edgar A. Pfeil, Steven W. Arronge, San Antonio, Tex., for Emil E. Peters.

Russell Bailey, James L. McMurtry, Austin, Tex., for Ronald Earle and Raymond Frank.

Frederick M. Schattman, Thomas E. Myers, Fort Worth, Tex., for Tim Curry and Lon Evans.

John W. Fainter, 1st Asst. Atty. Gen., Ted L. Hartley, W. Barton Boling, Gerald C. Carruth, Lonny F. Zwiener, Asst. Attys. Gen., Austin, Tex., for Mark White.

Sue La Garde, Asst. Dist. Atty., Dallas, Tex., for Henry Wade.

Mark White, Atty. Gen., pro se.

Frederick M. Schattman, Asst. Dist. Atty., Fort Worth, Tex., for defendant-appellees.

Before AINSWORTH, CHARLES CLARK and WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

In 1979 the Texas Legislature rewrote the state's penal code provisions defining and regulating obscene materials and performances.[1] Shortly before the statute was due to go into effect, entrepreneurs in the "adult entertainment" business brought

1. Title 9, subchap. B., of the Texas Penal Code as amended, reads:

SUBCHAPTER B. OBSCENITY

§ 43.21. Definitions

(a) In this subchapter:

(1) "Obscene" means material or a performance that:

(A) the average person, applying contemporary community standards, would find that taken as a whole appeals to the prurient interest in sex;

(B) depicts or describes:

(i) patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated, including sexual intercourse, sodomy, and sexual bestiality; or

(ii) patently offensive representations or descriptions of masturbation, excretory functions, sadism, masochism, lewd exhibition of the genitals, the male or female genitals in a state of sexual stimulation or arousal, covered male genitals in a discernibly turgid state or a device designed and marketed as useful primarily for stimulation of the human genital organs; and

(C) taken as a whole, lacks serious literary, artistic, political, and scientific value.

(2) "Material" means anything tangible that is capable of being used or adapted to arouse interest, whether through the medium of reading, observation, sound, or in any other manner, but does not include an actual three dimensional obscene device.

(3) "Performance" means a play, motion picture, dance, or other exhibition performed before an audience.

(4) "Patently offensive" means so offensive on its face as to affront current community standards of decency.

(5) "Promote" means to manufacture, issue, sell, give, provide, lend, mail, deliver, transfer, transmit, publish, distribute, circulate, disseminate, present, exhibit, or advertise, or to offer or agree to do the same.

(6) "Wholesale promote" means to manufacture, issue, sell, provide, mail, deliver, transfer, transmit, publish, distribute, circulate, disseminate, or to offer or agree to do the same for purpose of resale.

(7) "Obscene device" means a device including a dildo or artificial vagina, designed or marketed as useful primarily for the stimulation of human genital organs.

(b) If any of the depictions or descriptions of sexual conduct described in this section are declared by a court of competent jurisdiction to be unlawfully included herein this declaration shall not invalidate this section as to other patently offensive sexual conduct included herein.

§ 43.23. Obscenity

(a) A person commits an offense if, knowing its content and character, he wholesale promotes or possesses with intent to wholesale promote any obscene material or obscene device.

(b) An offense under Subsection (a) of this section is a felony of the third degree.

(c) A person commits an offense if, knowing its content and character, he:

(1) promotes or possesses with intent to promote any obscene material or obscene device; or

(2) produces, presents, or directs an obscene performance or participates in a portion thereof that is obscene or that contributes to its obscenity.

(d) An offense under Subsection (c) of this section is a Class A misdemeanor.

(e) A person who promotes or wholesale promotes obscene material or an obscene device or possesses the same with intent to promote or wholesale promote it in the course of his business is presumed to do so with knowledge of its content and character.

(f) A person who possesses six or more obscene devices or identical or similar obscene articles is presumed to possess them with intent to promote the same.

several separate suits against Texas law enforcement officials to enjoin prosecutions under the revised statute. The suits also sought declaratory judgments that the statute was unconstitutional. In two separate memorandum opinions, federal district courts for the Northern and the Southern Districts of Texas denied the requested relief. The appeals from these rulings were consolidated for oral argument and for our decision here.

The able trial judges, facing the task of adjudicating challenges to the constitutionality of a state statute, were confronted in these cases with a multiplicity of parties, threshold procedural niceties, and substantive legal theories.[2] Both judges determined that jurisdiction lay in their respective courts and both declined invitations to invoke abstention. Each judge parsed the statute passage by passage and determined that the Texas Legislature's effort to regulate commercial "obscenity" consistent with

constitutional guarantees of liberty passed muster.

We affirm the judgments below in all but three particulars. The portions of each judgment upholding the constitutionality of § 43.21(a)(4), § 43.21(a)(5), and § 43.23(e) & (f) are vacated. We determine that, although each of these provisions presents a troublesome question of constitutional law, a decision on the merits would be inappropriate at this time.[3] The present posture of this case counsels abstention on our part pending an opportunity for narrowing and clarifying state court construction. Therefore, we vacate the judgments below as to these three provisions and dismiss the claims raised against them without prejudice.[4]

## I. THE CONSTITUTIONALLY VALID PROVISIONS

Plaintiffs attack the challenged statutes from several angles. They maintain that

(g) This section does not apply to a person who possesses or distributes obscene material or obscene devices or participates in conduct otherwise prescribed * by this section when the possession, participation, or conduct occurs in the course of law enforcement activities.

*So enrolled in bill; probably should read "proscribed."*

2. The litigation in the Southern District of Texas took the form of three separate lawsuits consolidated for hearings on preliminary relief and for trial on the merits. The plaintiffs included at least twenty separate business entities and one individual. The complaints named twenty-two local law enforcement officials from seven different Texas counties and the Attorney General of Texas. The litigation in the Northern District involved five original plaintiffs, six original defendants, and two intervenors. Before reaching the merits, the trial courts had to resolve venue challenges, troublesome standing questions, and the applicability of various abstention doctrines. To compound these vexing conundrums, both judges faced severe time pressures because the suits were filed very shortly before the impeding effective date of the newly enacted statute.

3. In reaching the merits of the judgments below to affirm the constitutionality of most of the Texas obscenity statute while abstaining from an adjudication of the three provisions discussed in Part II, *infra*, we reach a result analogous to the Supreme Court's partial abstention in *Babbitt v. United Farm Workers National Union*, 442 U.S. 289, 99 S.Ct. 2301, 60

L.Ed.2d 895 (1979). In *Babbitt*, the Supreme Court reviewed the decision of a three-judge district court striking down Arizona's statute regulating agricultural labor-management relations. In reversing the district court's judgment, the Supreme Court determined that the district court should have abstained from adjudicating the constitutionality of the criminal penalty and consumer publicity provisions of the Arizona statute pending review by state courts, 442 U.S. 305, 99 S.Ct. at 2312, but reached the merits of the challenge to decide that the statutory representation election procedures were constitutionally sound. 442 U.S. 312, 99 S.Ct. at 2316–17.

4. Ordinarily, *Pullman*-influenced abstention dictates a remand of the case to the continuing jurisdiction of the district court. *Zwickler v. Koota*, 389 U.S. 241, 244 n.4, 88 S.Ct. 391, 393, n.4, 19 L.Ed.2d 444 (1967). Texas courts, however, will not grant declaratory relief if a claim is remanded in this posture. *United Services Life Ins. Co. v. Delaney*, 396 S.W.2d 855 (Tex. 1965). *See also Ex parte Green*, 548 S.W.2d 914 (Tex.Cr.App.1977). Therefore, in order to remove any obstacles to an adjudication of the plaintiffs' rights in state courts and to assure the availability of a federal forum should the state adjudication prove unsatisfactory, we dismiss these claims without prejudice. *Harris County Comm'rs Court v. Moore*, 420 U.S. 77, 88 n.14, 95 S.Ct. 870, 878 n.14, 43 L.Ed.2d 32 (1975); *Abell v. Frank*, 625 F.2d 653, 658 n.9 (5th Cir. 1980).

some provisions are unconstitutionally vague or overbroad or both. They complain that certain provisions threaten those charged under the statute with denials of procedural due process and that other provisions infringe upon fundamental rights of expression and personal autonomy. They assert that the statute, by outlawing the sale or possession in quantity of sexually stimulative materials and devices, denies equal protection of the laws to handicapped persons dependent on these items for sexual gratification.

The district courts rejected each of these assaults on the statute. Except for the modifications we discuss, *infra*, regarding §§ 43.21(a)(4), 43.21(a)(5), and 43.23(e) & (f), we affirm the judgments below. Most of the statute is firmly grounded in language prescribed or approved in prior Supreme Court obscenity decisions.

■ Section 43.21(a)(1) defines obscenity with language drawn directly from the Supreme Court's landmark *Miller* decision.[5] The section recites, with little variation, the familiar three-part *Miller* test for determining the boundary between protected expression and regulable obscenity. Under the *Miller* test, expression goes beyond the limits of First Amendment protection if it: (1) taken as a whole, appeals to the prurient interest; (2) depicts or describes specified sexual conduct in a patently offensive way; and (3) taken as a whole, lacks serious literary, artistic, political, or scientific value. 413 U.S. at 24, 93 S.Ct. 2614. Except for §§ 43.21(a)(4), 43.21(a)(5), and the presumptions contained in § 43.23(e) & (f), the Texas statute's deviations from the *Miller* standard are constitutionally unobjectionable. We review them briefly.

■ *§ 43(a)(1)(A)*—The plaintiffs ("Red Bluff") complain of the statute's lack of a definition for the term "prurient interest" in § 43.21(a)(1)(A). Noting that jury charges in Texas obscenity cases customari-

ly repeat the statutory language verbatim, Red Bluff expresses concern that juries will decide these cases without the benefit of an instruction defining "prurient interest in sex" as "a shameful or morbid interest." *See Miller v. California*, 413 U.S. at 16 n.1, 93 S.Ct. at 2611 (1973) (quoting the definition of prurient interest in California Penal Code § 311(a) (1969). Yet, the lack of a definition for the term "prurient interest" does not render the statute constitutionally deficient. Many jurors may find it helpful to learn that "prurient interest" means shameful and morbid, but no conviction has, to our knowledge, been overturned for the trial court's failure to so instruct a jury. Moreover, Texas courts construing the provision are obliged to apply any "technical or particular meaning" the term has acquired from prior judicial review. *See* Texas Penal Code § 1.05(b); Tex.Rev.Civ.Stat.Ann. art. 5429b–2, § 2.01 (Vernon Supp.1980).

■ *§ 43.21(a)(1)(B)(i)*—Red Bluff objects on vagueness and overbreadth grounds to the statute's specification of "sexual intercourse, sodomy, and sexual bestiality" as varieties of sexual conduct whose patently offensive depictions or descriptions may be found obscene. The list of potentially "patently offensive" acts in *Miller* did not include these three examples of sexual conduct, 413 U.S. at 25, 93 S.Ct. at 2615, but the *Miller* list was not intended to be exhaustive. *Hamling v. United States*, 418 U.S. 87, 114, 94 S.Ct. 2887, 2906, 41 L.Ed.2d 590 (1974). These additional terms yield a plain, ascertainable meaning; their addition reduces rather than increases the vagueness of the Texas statute. Nor by these additions to the *Miller* catalogue of forbidden depictions of sexual acts does the Texas statute sweep too broadly. Subsection 43.-21(a)(1)(B)(i) is not constitutionally objectionable.

■ *§ 43.21(a)(1)(B)(ii)*—This subsection specifies "sadism, masochism, lewd exhibi-

---

5. *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). *Compare Miller*, 413 U.S. at 24, 93 S.Ct. at 2614 (setting forth the conjunctive three-element test delimiting the scope of obscene expression unprotected by

the First Amendment) *and id.* 30–34 (holding the three-element test must be applied with reference to "the average person, applying contemporary community standards") *with* Texas Penal Code § 43.21(a)(1), reprinted *supra* n.1.

tion of ... the male or female genitals in a state of sexual stimulation or arousal, covered male genitals in a discernibly turgid state or a device designed and marketed as useful primarily for stimulation of the human genital organs" as subjects whose patently offensive representations or depictions may be found obscene. *Miller* does not explicitly authorize this formula, but it does require specific definition of sexual conduct and offers "lewd exhibition of the genitals" as a generic example of a potentially obscene subject. 413 U.S. at 24–25, 93 S.Ct. at 2614–2615. The Texas statutory language focusing on stimulated, aroused, or turgid genitals follows the Oregon and Hawaii obscenity statutes cited—although not expressly approved—in *Miller* as examples of acceptable state regulation. 413 U.S. at 24 n.6, 93 S.Ct. at 2615 n.6 *citing* Or.Rev.Stat. §§ 255(5) & (11); Hawaii Penal Code § 712–1210(8). The Supreme Court has subsequently approved the inclusion of representations of sado-masochistic conduct as potentially obscene. *Ward v. Illinois*, 431 U.S. 767, 773, 97 S.Ct. 2085, 2089, 52 L.Ed.2d 738 (1977). The addition of masturbation aids does not significantly expand the *Miller* court's list of potentially obscene subjects, which included masturbation. 413 U.S. at 25, 93 S.Ct. at 2615. None of these deviations from the language in *Miller* constitutes a facial encroachment on Red Bluff's constitutional liberties.

■ *§ 43.21(a)(1)(C)*—To be obscene under *Miller*, expression must lack "serious literary, artistic, political, *or* scientific value." 413 U.S. at 24, 93 S.Ct. at 2614 (emphasis added). To be obscene under the Texas obscenity statute, expression must lack "serious literary, artistic, political *and* scientific value." § 43.21(a)(1)(C) (emphasis added). The variance in conjunctions does not rise to a level of constitutional significance. *Miller* makes plain that serious redeeming value from the perspective of any of these four disciplines rescues a work from the unprotected status of obscenity. 413 U.S. at 21–22, 93 S.Ct. at 2613. Texas courts are bound to construe § 43.-21(a)(1)(C) with this constitutional constraint in mind. *West v. State*, 514 S.W.2d

433, 438 (Tex.Crim.App.1974). The substitution of "and" for "or" in § 43.21(a)(1)(C) does not generate a facial threat to constitutional rights.

■ *§§ 43.21(a)(2) & (3)*—These subsections define "material" and "performance," the synonyms substituted for the *Miller* test's term "work." The definition of "performance" tracks language in Hawaii Penal Code § 712–1210(4), a statutory example cited in *Miller*, 413 U.S. at 24 n.6, 93 S.Ct. at 2614 n.6. The definition of "material" follows New York Penal Law § 235.00(2), a statute that weathered the void-for-vagueness attack of *People v. Heller*, 33 N.Y.2d 314, 352 N.Y.S.2d 601, 307 N.E.2d 805 (1973), *cert. denied sub nom., Buckley v. New York*, 418 U.S. 944, 94 S.Ct. 3231, 41 L.Ed.2d 1175 (1974). While the Texas statute departs from the New York definition of "material" by excluding "actual three dimensional obscene devices" the departure is of no constitutional moment. Sections 43.21(a)(2) & (3) are neither unconstitutionally vague nor facially overbroad.

■ *§ 43.21(a)(6)*—This subsection defines "wholesale promote," the conduct punishable as a third degree felony under § 43.23(b), in terms of various kinds of acts which have as their purpose the "resale" of obscene materials or devices. The catalogue of verbs used in the definition is drawn from New York Penal Law § 235.-00(4), reviewed for vagueness and approved in *People v. Heller.* The "resale" language confines the definition to commercial transactions. Therefore, this definition does not present the overbreadth threats inherent in § 43.21(a)(5)'s definition of "promote," discussed in Part II B, *infra.* Again, we perceive no facial constitutional infirmity.

■ *§ 43.21(a)(7)*—This subsection defines devices—including dildos and artificial vaginas—"designed or marketed as useful primarily for the stimulation of human genital organs" as obscene per se. The language is patterned on the Georgia obscenity statute. Ga. Code § 26–2101(c). In *Sewell v. State*, 233 S.E.2d 187 (Ga.1977), the appellant challenged his conviction un-

der the Georgia statute for selling an artificial vagina to an undercover police officer. The Georgia Supreme Court rejected his vagueness and overbreadth arguments and found no constitutional problem with the Georgia Legislature's prohibition on the sale of such devices. The United States Supreme Court dismissed Sewell's appeal for want of a substantial federal question. *Sewell v. Georgia*, 435 U.S. 982, 98 S.Ct. 1635, 56 L.Ed.2d 76 (1978). Thus, the constitutional propriety of the Texas counterpart to this Georgia obscenity provision is clear.

■ Plaintiff Gullick raises an equal protection claim on behalf of handicapped persons against prohibition on sales of sexually-oriented devices. However, the record on appeal is devoid of evidence supporting the assertions that, first, we should recognize a constitutional right in handicapped persons to the sexual devices proscribed by the statute and, second, that this right is burdened by the statute.[6] With nothing more than the naked legal conclusions on the record, we have no evidentiary basis to sustain the plaintiffs' proposed extension of the constitutional guarantee of personal autonomy. *See generally Roe v. Wade*, 410 U.S. 113, 152–53, 93 S.Ct. 705, 726, 35 L.Ed.2d 147 (1973). Further, the evidence is inadequate to support the contention that, assuming such a right exists, it is burdened by the statute.

As to the basic provisions of the statute evaluated above, it follows that the decisions of the district courts upholding their validity are correct and should be affirmed.

## II. THE QUESTIONABLE PROVISIONS

The judgments below do, however, require modification in three instances. We treat each with detailed consideration.

### A. § 43.21(a)(4): Defining "patently offensive" in terms of "community standards of decency"

In its effort to track the contours of permissible state regulation, the Texas Legislature deviated subtly but significantly from the *Miller* formula in modifying the standard that factfinders must apply in deciding whether an item is "patently offensive." *Miller* teaches that the issues of patent offensiveness and appeal to the prurient interest are to be determined by factfinders assuming the perspective of "the average person, applying contemporary community standards." *Playboy Publications, Inc. v. McAuliffe*, 610 F.2d 1353, 1363 (5th Cir.), *cert. dismissed*, 447 U.S. 931, 100 S.Ct. 3031, 65 L.Ed.2d 1131 (1980).

■ Explaining the rationale behind reliance on community standards to define the scope of First Amendment rights, Justice Burger stated "[i]t is neither realistic nor constitutionally sound to read the First Amendment as requiring that the people of Maine or Mississippi accept public depiction of conduct found *tolerable* in Las Vegas, or New York City." *Miller v. California*, 413 U.S. at 32, 93 S.Ct. at 2619 (emphasis added) (footnote omitted). In a subsequent obscenity decision, the Court noted "community standards must be applied by juries in accordance with their own understanding of the *tolerance* of the average person in their community...." *Smith v. United*

---

**6.** The evidence on this point consists of the following affidavit:

My name is Henry Gullick. I live at —— ——, Houston, Texas. I am a paraplegic. The enforcement of House Bill No. 1741 will deny me my constitutional right to privacy and to a normal sexual life, which rights are guaranteed to me under the First Amendment to the Constitution of the United States. Under the conditions imposed by a literal reading of this act regarding "devices designed or marketed as useful primarily for the stimulation of human genital organs", I

will not only be denied the right to purchase such devices but will also be denied the right to possess or use such devices within the privacy of my home. In addition, I am fearful that I will be threatened with criminal prosecution for exercising rights that are protected by the First Amendment to the Constitution of the United States if this act is enforced.

. . . .

/Signed
Henry Gullick

*States,* 431 U.S. 291, 305, 97 S.Ct. 1756, 1766, 52 L.Ed.2d 324 (1977) (emphasis added). It would be easy to make too much of the Court's choice of words. Nevertheless, the line between protected expression and punishable obscenity must be drawn at the limits of a community's tolerance rather than in accordance with the dangerous standards of propriety and taste.

The revised Texas obscenity statute modifies this standard of jury review by defining "patently offensive" as "so offensive on its face as to affront current community standards of *decency.*" § 43.21(a)(4) (emphasis added). The plaintiffs insist that this definition strays beyond the bounds of permissible regulation by substituting community standards of decency for community standards of tolerance. The substitution, Red Bluff maintains, expands the scope of regulation contemplated in *Miller* by banning not merely the expression a community regards as intolerable, but also the expression a community finds less than decent.[7]

 Whether Texas has exceeded its constitutional authority to regulate obscenity by defining "patently offensive" in terms of "decency" rather than "tolerance" is a significant question. But before the constitutional issue can be resolved, the interpretation of the critical word must be left to state courts. As the final arbiters of the Texas Legislature's intent, state courts deserve the first opportunity to decide if the Legislature intended to hold obscenity defendants to the community's norms of "proper" behavior and "taste" as opposed to a minimum standard of conduct the com-

munity is willing to tolerate. If on its face the statute warned too broadly, deference to the state courts would be inappropriate. Such is not the case here. There is ample room to formulate jury instructions that comport with § 43.21(a)(4) and the First Amendment rights of defendant charged with obscenity offenses. The pendency of ongoing state criminal proceedings in which the issue may be resolved and the potential for narrowing state court constriction move us to refrain from entering the fray in a facial challenge to this statute.

**B. § 43.21(a)(5): *Defining the term "promote"***

In its effort to draft a statute criminalizing every conceivable transaction in obscene materials or devices, the Texas Legislature defines "promote"—the act element of the offense prohibited in § 43.23(c)—in terms of nineteen different verbs. The sole modification to this far-reaching prohibition is § 43.23(g), which excepts transactions in the course of law enforcement activities.

There can be no doubt that the statutory definition of "promote," read in conjunction with the definitions of obscene materials in § 43.21(a)(2) and obscene devices in § 43.-21(a)(7), can be read to sweep within its ambit acts the state cannot criminalize. The literal language of the statute forbids the most sensitive and intimate conversations. For example, a husband could be found to have violated the letter of the statute by uttering in the privacy of the marital bedroom a verbal suggestion to procure for his wife one of the commercially available small appliances referred to as

---

7. The defendants find authority for § 43.-21(a)(4) in language from a 1962 Supreme Court plurality opinion equating "patent offensiveness" with "indecency" and quoting an Australian jurist on the applicability of "current standards of decency" to obscenity adjudication. *Manual Enterprises v. Day,* 370 U.S. 478, 482–85, 82 S.Ct. 1432, 1434–36, 8 L.Ed.2d 639 (1962) *quoting Regina v. Close* [1948] Vict LR 445, 463 (Judgment of Fullagar, J.). The California jury trying Marvin Miller on obscenity charges was instructed that "in determining whether the [allegedly obscene] material 'goes substantially beyond the customary limits of

candor and affronts contemporary community standards of decency,' it was to apply 'contemporary community standards of the State of California.' " *Miller v. California,* 413 U.S. at 31, 93 S.Ct. at 2618. The Supreme Court did not address the propriety of the "decency" component of this instruction in vacating Miller's conviction.

More recent Supreme Court pronouncements in the fluid area of obscenity jurisprudence cast doubt on the vitality of the language relied upon by the statute's defenders. *E.g., Smith v. United States,* 431 U.S. at 305, 97 S.Ct. at 1766.

vibrators.[8] *But cf. Stanley v. Georgia*, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969) (state regulation of possession of obscene materials in private residence held unconstitutional). A doctor could be found to have violated the letter of the statute by counseling his patient on surgical procedures for the implantation of a penile prosthesis. *But cf. Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) (state restriction on the dissemination of birth control information from physician to patient held unconstitutional).

 Numerous hypothetical circumstances can be projected in which the statute would be constitutionally overbroad if so applied. But the issue here is facial overbreadth, and, as the Supreme Court has observed, "facial overbreadth adjudication is an exception to our traditional rules of practice [whose] function [is] a limited one from the outset. . . ." *Broaderick v. Oklahoma*, 413 U.S. 601, 615, 93 S.Ct. 2908, 2917, 37 L.Ed.2d 830 (1973). Where, as here, the protected activity regulated by the state partakes more of conduct than of pure speech, the regulation will be invalidated only if the overbreadth is substantial "judged in relation to the statute's plainly legitimate sweep." *Id.* In balancing a statute's potential chilling effect on protected activity against the state's asserted interests in establishing the regulation, federal courts must proceed cautiously and refrain from facial adjudication "unless the statute is not readily subject to a narrowing construction by the state courts. . . ." *Erznoznik v. City of Jacksonville*, 422 U.S. 205,

216, 95 S.Ct. 2268, 2276, 45 L.Ed.2d 125 (1975).

 For the reasons discussed in Part III, *infra*, we do not reach the balancing task framed in this facial overbreadth challenge. If Texas law enforcement officials prosecute individuals under the hypothetical circumstances we have outlined, state courts construing §§ 43.21 & 43.23 will have the opportunity to find marital, medical, and other necessary exceptions narrowing the scope of § 43.21(a)(5)'s definition of promote.

### C. § 43.23(e) & (f): *Presuming knowledge and intent from possession.*

To convict for the offenses described in §§ 43.23(a) & (c), the State must establish that a defendant *knew* the content and character of the proscribed item and that he *intended* to promote an obscene material or device. Subsections (e) and (f) of § 43.23 establish presumptions to aid the State in proving the knowledge and intent elements of the offense. Subsection (e) provides that one who possesses obscene materials or devices with intent to promote them is presumed to have knowledge of their character. Subsection (f) provides that one who possesses "six or more obscene devices or identical or similar obscene articles"[9] is presumed to possess them with the intent to promote them.

 Red Bluff complains that these presumptions are irrational, hence impermissible as violative of Fourteenth Amendment due process.[10] To withstand due process

8. This hypothetical boudoir conversation is not as far-fetched as one might suppose. It was recently reported that sales of vibrators and related personal care massaging devices in the United States totalled $13.3 million on 830,000 units in 1979. ESQUIRE, July 1980, at 62.

9. This language is ambiguous. It may be read to mean that possession of six devices or possession of as few as two "identical or similar" obscene books gives rise to the presumption. On the other hand, it may be interpreted to mean that six items—devices or units of printed matter—are required to trigger the presumption, but that, in the case of printed materials, there is imposed the additional condition

that the items be "identical or similar." We leave for Texas courts the task of deciphering this cryptic passage.

10. Because these plaintiffs have suffered neither the threat nor the reality of a criminal prosecution under these presumptions, their standing to assert—and our jurisdiction to decide—the claim is questionable. The issue we have jurisdiction to decide here, then, is merely whether the statutory presumptions are facially overbroad—*i. e.*, whether the presumptions inhibit the exercise of First Amendment rights by threatening a denial of due process. See n.18, *infra*. And while we have jurisdiction to decide that issue, the considerations set out in this

scrutiny, a statutory presumption establishing an element of criminal offense must rest on a logical connection between the fact proved and the fact presumed. *Leary v. United States*, 395 U.S. 6, 36, 89 S.Ct. 1532, 1548, 23 L.Ed.2d 57 (1969) ("A criminal statutory presumption . . . [is] unconstitutional unless it can at least be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend.") Red Bluff insists that, in a commercial enterprise retailing hundreds or perhaps thousands of different books and magazines, there can be no reasonable expectation that a bookseller has examined each item or is knowledgeable about its contents. Red Bluff further questions the logical force behind the inference that one who possesses six obscene items must likely intend to provide them to others. *Cf. Vachon v. New Hampshire*, 414 U.S. 478, 94 S.Ct. 664, 38 L.Ed.2d 666 (1974) (state's failure to prove more than defendant's control of business premises where offensive item was sold to minor warrants reversal of conviction for willfully contributing to the delinquency of a minor; proof of control of premises does not establish the requisite knowledge or intent).

Red Bluff also attacks the § 43.23 presumptions on the ground that, working conjunctively, they eliminate the necessity of proving scienter. Obscenity statutes permitting criminal convictions without proof of scienter impose an unconstitutional burden on First Amendment rights. *Smith v. California*, 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959) (reversing the conviction of a bookseller charged under a statute imposing strict criminal liability for sales of obscene materials). By allowing a jury to infer guilty intent from possession and guilty knowledge from possession coupled with guilty intent, Red Bluff argues, the statute stacks one presumption atop another to eliminate an effective scienter element of the crime. Put another way, it is urged that with these presumptions in operation, the State may satisfy its burden of proving that a person intended to sell items he knew to be obscene by showing mere possession of the outlawed materials.

Relevant to but not dispositive of this issue is the Supreme Court's dismissal of the appeal in *People v. Kirkpatrick*, 32 N.Y.2d 17, 343 N.Y.S.2d 70, 295 N.E.2d 753 (1973), *appeal dismissed for want of a substantial federal question sub nom., Kirkpatrick v. New York*, 414 U.S. 948, 94 S.Ct. 283, 38 L.Ed.2d 204 (1974). Kirkpatrick and his co-defendants were convicted of violating New York's obscenity statute, which contains statutory presumptions identical to §§ 43.23(e) & (f). On appeal, Kirkpatrick contended: (1) there was insufficient evidence to sustain a finding that the defendants knew the obscene character of the materials they were charged with selling; and (2) the statutory presumption of constructive knowledge flowing from possession was unconstitutional. The New York Court of Appeals affirmed the convictions on the alternative grounds that the evidence of actual knowledge was sufficient and that the presumptions were constitutional as applied. *People v. Kirkpatrick*, 32 N.Y.2d at 22, 343 N.Y.S.2d at 73, 295 N.E.2d at 756. Recognizing the precedential effect of a dismissal of an appeal under these circumstances,[11] we discern no definitive guidance on the validity of the presumptions from the Supreme Court's summary affirmance of the New York court's two-pronged holding.[12]

---

opinion persuade us that we should not exercise it. *See* Part III, *infra.*

**11.** *Mandel v. Bradley*, 432 U.S. 173, 176, 97 S.Ct. 2238, 2240, 53 L.Ed.2d 199 (1977) (summary dismissals reject jurisdictional challenges, leaving judgments on the merits undisturbed and precedential on their facts).

**12.** Nor do we perceive a conclusive answer to the challenge to §§ 43.23(e) & (f) in our Circuit's validation of the presumption allowed by 18 U.S.C. § 1465 of an intent to sell from the knowing transportation of two or more obscene items. *See United States v. Hill*, 500 F.2d 733, 739–40 (5th Cir. 1974), *cert. denied*, 420 U.S. 952, 95 S.Ct. 1336, 43 L.Ed.2d 430 (1975). The analogy between the Texas statute and 18 U.S.C. § 1465 is tenuous. Logic justifies the drawing of more sweeping inferences about intent from proof of the deliberate carriage of

■ We are again led to abstain from adjudication on the merits of this facial challenge to §§ 43.23 (e) & (f). One can certainly imagine hypothetical cases in which the application of either presumption individually or the confluence of both presumptions could deny a criminal defendant due process or impermissibly burden First Amendment rights by dispensing with the necessity of proving scienter. The state courts of Texas, however, deserve the opportunity to determine in the first instance how these presumptions shall operate in the state's regulatory scheme. Texas courts may, in their formulation of jury instructions, obviate any conflict between the application of the presumptions and due process and First Amendment requirements.[13] Cf. Mishkin v. New York, 383 U.S. 502, 510, 86 S.Ct. 958, 964, 16 L.Ed.2d 56 (1966) (citing New York court's narrowing interpretation of statutory presumptions to prevent convictions for ignorant or unintentional trafficking in obscene books in People v. Finkelstein, 9 N.Y.2d 342, 344–45, 214 N.Y. S.2d 363, 174 N.E.2d 470 (1961)).

## III. THE ABSTENTION ISSUE

■ Noting the absence of any pending state criminal proceedings at the time these suits were heard and authority counselling against abstention in suits challenging the facial constitutionality of state regulations, the district courts declined to abstain. The lack of an ongoing state criminal proceeding warranted the district courts' refusal to apply Younger abstention.[14] Moreover, in view of the high cost of abstention in the context of suits seeking review of statutes exerting a purported chilling effect on First Amendment rights, see Procunier v. Martinez, 416 U.S. 396, 404, 94 S.Ct. 1800, 1807, 40 L.Ed.2d 224 (1974), we cannot say that either district court abused its discretion in declining to invoke Pullman abstention.[15] Thus, our decision to

---

an item in interstate commerce than from proof of mere possession. Hill simply decided a different question.

13. Tex. Penal Code § 2.05 (Vernon Supp.1980) minimizes the danger by prescribing rules for the operation of Penal Code presumptions:

§ 2.05. Presumption
When this code or another penal law establishes a presumption with respect to any fact, it has the following consequences:

(1) if there is sufficient evidence of the facts that give rise to the presumption, the issue of the existence of the presumed fact must be submitted to the jury, unless the court is satisfied that the evidence as a whole clearly precludes a finding beyond a reasonable doubt of the presumed fact; and

(2) if the existence of the presumed fact is submitted to the jury, the court shall charge the jury, in terms of the presumption and the specific element to which it applies, as follows:
(A) that the facts giving rise to the presumption must be proven beyond a reasonable doubt;
(B) that if such facts are proven beyond a reasonable doubt the jury may find that the element of the offense sought to be presumed exists, but it is not bound to so find;
(C) that even though the jury may find the existence of such element, the state must prove beyond a reasonable doubt each of the other elements of the offense charged; and
(D) if the jury has a reasonable doubt as to the existence of a fact or facts giving rise to the presumption, the presumption fails and the jury shall not consider the presumption for any purpose.

14. Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Younger teaches that, absent a showing of bad faith or harassment by state officials or other exceptional circumstances meriting equitable relief, a federal court should refrain from rendering a decision that interferes with pending state criminal proceedings. See generally C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4252 (1978).

"Considerations of . . . comity in our federal system . . . have little force in the absence of a pending state proceedings." Lake Carriers Association v. MacMullen, 406 U.S. 498, 509, 92 S.Ct. 1749, 1756, 32 L.Ed.2d 257 (1972).

15. Railroad Comm. of Texas v. Pullman, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Pullman teaches that a federal court should refrain from exercising jurisdiction over a constitutional challenge to state action if the resolution of an unsettled question of state law promises to dispose of the case without the need for constitutional adjudication. See generally C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4242 (1978).

A district court's discretionary decision to invoke—or to refrain from invoking—Pullman

abstain here should not be read as a reversal of the judgments before us for errors. Instead, in much the same way that circumstances arising between trial and appeal can moot a controversy, intervening circumstances have rendered abstention by this Court appropriate.

Since the first of these cases was heard and decided on the merits by the district court for the Southern District of Texas in September 1979, this Court[16] and the district court for the Northern District of Texas have denied temporary injunctive relief restraining law enforcement officials from bringing prosecutions under the statute in state courts. Consequently, criminal prosecutions have ensued and are pending.[17] The intervention of these ongoing state criminal proceedings adds a factor of significant weight to the abstention calculus we must face at this stage of the litigation.

It should be stressed that abstention here is not mandatory under *Younger* principles standing alone. Although *Younger* mandates abstention even when state criminal proceedings do not commence until after the federal suit is filed, *Hicks v. Miranda*, 422 U.S. 332, 349, 95 S.Ct. 2281, 2291, 45 L.Ed.2d 223 (1974), the district courts here have held "proceedings of substance on the merits" prior to the institution of state criminal proceedings. *But see id.* at 353,

n.1, 95 S.Ct. at 2293, n.1 (Stewart, J., dissenting) (criticizing the majority's lack of clarity in delineating when the intervention of state proceedings forces federal courts to abstain). They were not bound to abstain. Further, the *Younger* doctrine does not preclude declaratory relief when the applicant is not currently involved in a state criminal prosecution. *Steffel v. Thompson*, 415 U.S. 452, 475, 94 S.Ct. 1209, 1223, 39 L.Ed.2d 505 (1974).

Rather, our abstention is an exercise of the discretion we enjoy as an equity court confronting a suit seeking equitable relief from the challenged statute. Justice Rehnquist, writing for the Supreme Court in *Moore v. Sims*, 442 U.S. 415, 428, 99 S.Ct. 2371, 2379, 60 L.Ed.2d 994 (1979), pointed out "three distinct considerations that counsel abstention when broad-based challenges are made to state statutes," and observed that, "it is common to see each figure in an abstention decision...." Briefly stated, these three considerations are: (1) the *Pullman* concern that a federal court's constitutional adjudication will be rendered nugatory by a subsequent state court decision interpreting differently the challenged state statute; (2) the concern for assuring a concrete Article III case or controversy;[18] and (3) the "Federalism"

---

abstention is reversible only for an abuse of that discretion. *Chancery Clerk of Chickasaw County, Mississippi v. Wallace*, 646 F.2d 151 (5th Cir. 1981).

**16.** A panel of this Circuit denied Red Bluff's motion for stay pending appeal. In an unpublished opinion dated October 12, 1979, the panel determined that the appellants had failed to meet the stringent preconditions for obtaining such a stay. *See Coleman v. Paccar, Inc.*, 424 U.S. 1301, 1305, 96 S.Ct. 845, 847, 47 L.Ed.2d 67 (1976) (per Rehnquist, J., as Circuit Judge); F.R.A.P. 8. The panel did not address the merits of Red Bluff's appeal.

**17.** For example, as of March 6, 1980, twenty-two cases against nineteen different defendants were in progress in Tarrant County (Fort Worth), Texas. Brief of Appellees Curry, Evans, Hopkins, et al., at 12.

**18.** Doubt over the existence of an Article III case or controversy does not play a role in our decision to abstain. The ordinary injury-in-fact

requirement for standing is properly relaxed in the case of facial overbreadth challenges "because of the 'danger of tolerating, in the area of First Amendment freedoms, the existence of a penal statute susceptible of sweeping an improper application.'" *Bigelow v. Virginia*, 421 U.S. 809, 816, 95 S.Ct. 2222, 2229, 44 L.Ed.2d 600 (1975) *quoting NAACP v. Button*, 371 U.S. 415, 433, 83 S.Ct. 328, 338, 9 L.Ed.2d 405 (1963). Anticipatory constitutional challenges should not lightly be dismissed for lack of a justiciable controversy because, as our Circuit recently observed, they "play a most vital role in modern efforts to enforce constitutional rights." *International Society for Krishna Consciousness v. Eaves*, 601 F.2d 809, 817 (5th Cir. 1979). Thus, we do not regard the anticipatory nature of this litigation as a fact militating in favor of the abstention. These plaintiffs clearly have standing. *Cf. Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298, 99 S.Ct. 2301, 2309, 60 L.Ed.2d 895 (1979) (plaintiffs' alleged intention to engage in conduct proscribed by certain provisions of the challenged

concern for avoiding interference with the construction of state law by state courts. 442 U.S. at 428–29, 99 S.Ct. at 2379–80. We follow this analysis of the abstention issue by detailed application of the first and third considerations.

## A. The Pullman Concern

■ The two-pronged predicate for *Pullman* abstention articulated by this Court is: "(1) there must be an unsettled issue of state law; and (2) there must be a possibility that the state law determination will moot or present in a different posture the federal constitutional question raised." *Palmer v. Jackson*, 617 F.2d 424, 428 (5th Cir. 1980). That predicate is presented by the case before us.

This anticipatory challenge to the Texas obscenity statute permitted Texas courts no opportunity to interpret the Legislature's new enactment. The plaintiffs themselves complain of the statute's ambiguity. Indeed, that is one of the principal assertions underlying their claim for relief.[19] Thus, the existence of unsettled state law issues is manifest.

The second precondition for *Pullman* abstention is also met. We have endeavored, in the course of our discussion of §§ 43.-21(a)(4), 43.21(a)(5), and 43.23(e) & (f) in Part II, *supra*, to point out the potential for narrowing the sweep of these statutory passages to conform to the constitutional requirements of the First and Fourteenth Amendments. Texas courts may interpret the statute in a manner that comports with constitutional guarantees of liberty. In that event, plaintiffs' claims could be moot. The state courts may, on the other hand, interpret the statute in a manner that reveals a conflict between the Legislature's intent and the federal constitutional rights of Texas' citizens. Until state courts definitively construe the statute, we are reluctant to interpose a constitutional ruling based upon our intuitive perception of unsettled Texas law issues. The *Pullman* concern presents itself strongly in this case.

■ If the statute warned so broadly that constitutionally privileged speech or conduct would clearly be inhibited, we would not abstain. *Kusper v. Pontikes*, 414 U.S. 51, 54–56, 94 S.Ct. 303, 306–07, 38 L.Ed.2d 260 (1973) (abstention held inappropriate where challenged Illinois statute restricting participation in political primary elections was not "fairly susceptible" of a constitutional construction); *Younger v. Harris*, 401 U.S. at 53–54, 91 S.Ct. at 754–755 (gross unconstitutionality of a state action is an exceptional circumstance obviating the need for abstention); *Dombrowski v. Pfister*, 380 U.S. 479, 489–90, 85 S.Ct. 1116, 1122–23, 14 L.Ed.2d 22 (1965). But here the words are ambiguous in a relatively narrow range. We must not make it impossible to draft legislation by finding facial overbreadth and ambiguity in all words. The difficulty of defining obscenity in words has been well-considered by the courts.[20]

Arizona statute presents a justiciable case or controversy with respect to those provisions).

19. In addition to the overbreadth claims we have treated more fully in Part I, *supra*, plaintiffs complain that many provisions of §§ 43.21 & 43.23 are unconstitutionally vague. We find the district court's disposition of these claims correct. The language of the statute is derived, by and large, from Supreme Court decisions delineating the limits of state obscenity regulation. Even under the stringent standards traditionally applied to statutes affecting First Amendment rights, *see generally, Smith v. Goguen*, 415 U.S. 566, 573, 94 S.Ct. 1242, 1247, 39 L.Ed.2d 605 (1974), this statute affords fair notice of the conduct it proscribes. *See International Society for Krishna Consciousness v. Eaves*, 601 F.2d 809, 830–31 (5th Cir. 1979).

20. *See, e. g., Miller v. California*, 413 U.S. at 22–23, 93 S.Ct. at 2613–2614 ("Apart from the initial formulation in the *Roth* case, no majority of the Court has at any given time been able to agree on a standard to determine what constitutes obscene, pornographic material subject to regulation under the States' police power. We have seen 'a variety of views among the members of the Court unmatched in any other course of constitutional adjudication.' This is not remarkable, for in the area of freedom of speech and press the courts must always remain sensitive to any infringement on genuinely serious literary, artistic, political, or scientific expression. This is an area in which there are few eternal verities.") (per Burger, C. J.) (citations omitted); *Jacobellis v. Ohio*, 378 U.S. 184, 197, 84 S.Ct. 1676, 1683, 12 L.Ed.2d 793

## B. *The Federalism Concern*

Our decision is motivated, in part, by the concerns expressed in Justice Black's seminal discussion of the relationship between the states and the federal courts in *Younger*:

> "Our Federalism" . . . is a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States.

401 U.S. at 44, 91 S.Ct. at 750. The Supreme Court has in recent years issued a series of opinions ordering abstention from suits bringing into focus a conflict between legitimate state regulatory interests and the federal constitutional rights of individuals. *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975) (ordering abstention in suit challenging the constitutionality of Ohio nuisance statute closing theaters that show obscene films); *Juidice v. Vail*, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977) (ordering abstention in suit challenging state statute authorizing contempt proceedings to enforce civil judgment debts); *Trainor v. Hernandez*, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977) (ordering abstention in suit challenging the constitutionality of state procedures for attaching the property of welfare recipients charged with fraudulently concealing assets in their application for public assistance); *Moore v. Sims*, 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979) (ordering abstention in suit challenging the constitutionality of Texas child protection laws).

The Texas Legislature has attempted in the challenged statute to regulate a matter of concern to the people of Texas—commercial transactions in obscene materials. The State has a legitimate interest in promulgating such regulations. *Miller v. California*, 413 U.S. at 18–19, 93 S.Ct. at 2611–2612. The product of the State's legislative processes may not be the statute we would choose as the best accommodation between the State's legitimate regulatory purposes and the federal constitutional rights of its citizens. Yet, as a federal court, we possess no mandate to engage in detailed editing of the Legislature's effort to strike the precarious balance necessary in this sensitive area. *See Miller v. California*, 413 U.S. at 25, 93 S.Ct. at 2615.

If any of the parties to this suit are among the defendants subject to the ongoing state prosecutions, it has not been called to our attention. But while none of the plaintiffs may have "an opportunity to present their federal claims in the state proceedings," *Juidice v. Vail*, 430 U.S. at 337, 97 S.Ct. at 1218, the widespread ongoing state proceedings should create the opportunity for the state courts to resolve the constitutional challenge to the three provisions of the statute we leave subject to state court interpretation.[21] Our intervention at this stage would directly contradict the Supreme Court's guidance in *Moore v. Sims*:

> State courts are the principal expositors of state law. Almost every constitutional challenge—and particularly one as far ranging as that involved in this case—offers the opportunity for narrowing constructions that might obviate the consti-

---

(1964) ("[C]riminal laws in this area are constitutionally limited to hard-core pornography. I shall not attempt further to define the kinds of material I understand to be embraced within that shorthand description; and perhaps I could never succeed in intelligibly doing so. But I know it when I see it. . . .") (Stewart, J., concurring) (footnote omitted).

21. "The breadth of the challenge to a complex state statutory scheme has traditionally militated in *favor* of abstention, not *against* it. This is evident in a number of distinct but related lines of abstention cases which, although articulated in different ways, reflect the same sensitivity to the primacy of the State in the interpretation of its own laws and the cost to our federal system of government inherent in federal court interpretation and subsequent invalidation of parts of an integrated statutory framework." *Moore v. Sims*, 442 U.S. at 428, 99 S.Ct. at 2379 (emphasis in original).

**1036**

tutional problem and intelligently mediate federal constitutional concerns and state interests. When federal courts disrupt that process of mediation while interjecting themselves in such disputes, they prevent the informed evolution of state policy by state tribunals. The price exacted in terms of comity would only be outweighed if state courts were not competent to adjudicate federal constitutional claims—a postulate we have repeatedly and emphatically rejected.

442 U.S. 428, 99 S.Ct. at 2380 (citations omitted).

The comity principles underlying the *Younger* line of cases are brought to bear upon us with full force now that Texas has commenced criminal prosecutions to enforce its regulatory scheme. Weighing these together with the *Pullman* concerns discussed in Part IIIA, *supra*, we find abstention prudent and proper.

## II. CONCLUSION

To summarize, we affirm the trial court judgments upholding the constitutionality of the Texas obscenity statute, except as to judgments upholding the facial validity of §§ 43.21(a)(4), 43.21(a)(5), 43.23(e) & 43.-23(f). Rather than deciding the merits of the constitutional challenges to the facial validity of these provisions we find that the balance of factors presented in this appeal warrants our abstention. Therefore, we vacate those portions of the district court judgments involving §§ 43.21(a)(4), 43.-21(a)(5) and 43.23(e) & (f) of the Texas statute and dismiss the plaintiffs' claims as to them without prejudice.

AFFIRMED IN PART; VACATED AND DISMISSED WITHOUT PREJUDICE IN PART.