**Austin B. SHELTON, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. B14–81–398–CR.**

Court of Appeals of Texas, Houston (14th Dist.).

May 20, 1982.

**650**

Terry Gaiser, Houston, for appellant.

Timothy Taft, Houston, for appellee.

Before PRESSLER, MURPHY and ROBERTSON, JJ.

PAUL PRESSLER, Justice.

Charged by information with promoting obscenity, the appellant entered a plea of not guilty. In a trial before the court, appellant was found guilty and assessed a fine of $500.00 as punishment.

By his first ground of error, appellant alleges that the trial court erred in denying appellant's motion to quash the information as vague, indefinite and uncertain, and in violation of due process because the word "sodomy" used in the information is such that persons of common intelligence must necessarily differ as to its meaning.

The information upon which appellant was tried read in pertinent part:

AUSTIN BOYCE SHELTON hereafter styled the Defendant, heretofore on or about MAY 5, 1981, did then and there unlawfully AND KNOWING THE CONTENT AND CHARACTER OF THE MATERIAL, INTENTIONALLY SELL TO W.L. HAYDEN OBSCENE MATERIAL, NAMELY A MAGAZINE ENTITLED "SEXY M" AGAINST THE PEACE AND DIGNITY OF THE STATE.

It is sufficient to note that the word "sodomy" is not used in the information and, therefore, this ground of error is without merit. We also note that this argument has previously been raised and overruled. *See Taylor v. State*, 625 S.W.2d 839 (Tex. App.—Houston [14th Dist.] 1981); *Red Bluff Drive In, Inc. v. Vance*, 648 F.2d 1020, 1026 (5th Cir.1981); *Knight v. State*, 642 S.W.2d 180 (Tex.App.—Houston [14th Dist.]).

By his second ground of error, appellant alleges that the Texas statutory definition of obscenity is void for vagueness in that its failure to define the term "pruient interest in sex" violates due process and therefore, men of common intelligence must necessarily guess at its meaning and differ as to its application. This argument has been previously raised and overruled in *Red Bluff, supra*, as well as in *Taylor, supra*.

By his third ground of error, appellant alleges that the trial court erred in overruling his motion to quash the information on the ground that article 43.21 Tex. Penal Code Ann. (Vernon Supp.1982) is void for vagueness and overbreadth in its definition of the term "patently offensive." This issue was specifically left undecided by the Fifth Circuit in *Red Bluff, supra*.

Whether Texas has exceeded its constitutional authority to regulate obscenity by defining 'patently offensive' in terms of 'decency' rather than 'tolerance' is a significant question. But before the constitutional issue can be resolved, the interpretation of the critical word must be left to State courts. As the final arbiters of the Texas Legislature's intent, state courts deserve the first opportunity to decide if the Legislature intended to hold obscenity defendants to the community's norms of 'proper' behavior and 'taste' as opposed to a minimum standard of conduct the community is willing to tolerate. If on its face the statute warned too broadly, deference to the state courts would be inappropriate. Such is not the case here. There is ample room to formulate jury instructions that comport with § 43.21(a)(4) and the First Amend-

ment rights of defendant charged with obscenity offenses. The pendency of on-going state criminal proceedings in which the issue may be resolved and the potential for narrowing state court constriction move us to refrain from entering the fray in a facial challenge to this statute.

*Red Bluff, supra* at 1029.

*Red Bluff* leaves to us the opportunity of formulating jury instructions which could obviate any possible unconstitutional aspect of the use of the word "decency." However, appellant was tried before the court and attacks the facial validity of the statute. When there is a challenge to the constitutionality of a statute, it is vested with a presumption of validity and this court must construe it so as to uphold its constitutionality when possible. Tex.Penal Code Ann. § 1.05(b) (Vernon 1974); Tex.Rev.Civ. Stat.Ann. art. 5429b–2 § 3.01(1) (Vernon Supp.1982) (Code Construction Act); *Ely v. State,* 582 S.W.2d 416 (Tex.Crim.App.1974) (and cases cited therein).

■ Appellant has stated this ground of error as an attack on the vagueness of the statute, but his Motion to Quash and his argument speak to overbreadth. The traditional test of unconstitutional vagueness is whether the terms of the statute are so indefinite that "men of common intelligence must necessarily guess at its meaning and differ as to its application." *Connally v. General Construction Company,* 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926). Overbreadth is a concept parallel to the doctrine of vagueness. While vagueness speaks to the issues of notice and adequate standards, overbreadth speaks to the issue of whether the language of the statute is so broad that it criminalizes conduct protected under the Constitution. *See Dombrowski v. Pfister,* 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965); *Parker v. Levy,* 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974).

■ Under the First Amendment, appellant must demonstrate facial invalidity on grounds of overbreadth by showing that the terms of the challenged statute are broad enough to suppress protected speech.

*Gooding v. Wilson,* 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972); *Bigelow v. Virginia,* 421 U.S. 809, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975). The inquiry must be as to whether the language of the statute makes criminal any conduct which is constitutionally protected and not whether merely the specific conduct before the court is protected. A statute which regulates obscenity, therefore, may be enforced against any offender, regardless of the nature of the material involved in the specific case only if the definition of the proscribed material is not broader than the definition of obscenity used by the Supreme Court in drawing the line between protected and unprotected speech under the First Amendment.

The Supreme Court established the current basic guidelines governing the determination of what is obscene in *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). In *Miller,* the Supreme Court established a three prong test which examines

(a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole appeals to the pruient interest ...;
(b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work taken as a whole lacks serious literary, artistic, political, or scientific value.

413 U.S. at 24, 93 S.Ct. at 2614.

Appellant's complaint as to part (a) has been answered and he does not complain of part (c). We must determine whether the Texas legislature has gone beyond the definition of "patently offensive" allowed by the Supreme Court. Section 43.21(a)(4) Tex.Penal Code Ann. (Vernon Supp.1982), defines patent offensiveness as that which affronts current community standards of decency. In *Miller,* the court gave two "plain examples" of depictions or descriptions which could be regulated under part (b) as

(a) [p]atently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated [or] (b) [p]atently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals.

413 U.S. at 25, 93 S.Ct. at 2615.

Since *Miller,* the Supreme Court has provided additional insight into how the term "patently offensive" is to be interpreted. In *United States v. 12 200-ft. Reels of Film,* 413 U.S. 123, 93 S.Ct. 2665, 37 L.Ed.2d 500 (1973), the Court indicated that there was a certain "substantive" aspect to the Miller examples: "If and when ... a 'serious doubt' is raised as to the vagueness of the words 'obscene,' 'lewd,' 'lascivious,' 'filthy,' 'indecent' or 'immoral' as used to describe regulated material in [federal statutes], we are prepared to construe such terms as limiting regulated material to patently offensive representations or descriptions to that specific 'hard core' sexual conduct given as examples in *Miller v. California* ..." 413 U.S. at 130 n. 7, 93 S.Ct. at 2670 n. 7. In *Hamling v. United States,* 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974), the Court did precisely that, explaining that "*Miller* undertook to set forth examples of the types of material which a statute might proscribe as portraying sexual conduct in a patently offensive way." 418 U.S. at 113–14, 94 S.Ct. at 2905–06.

■ In *Jenkins v. Georgia,* 418 U.S. 153, 94 S.Ct. 2750, 41 L.Ed.2d 642 (1974), the Court acknowledged that the question of "patent offensiveness" was "essentially a question of fact," but went on to hold that the fact finder does not have "unbridled discretion in determining what is 'patently offensive.' ... While [the *Miller* list of examples] did not purport to be an exhaustive catalog of what juries might find patently offensive, it was certainly intended to fix substantive constitutional limitations, deriving from the First Amendment, on the type of material subject to such a determination." 418 U.S. at 160–61, 94 S.Ct. at 2755. In *Smith v. United States,* 431 U.S. 291, 97 S.Ct. 1756, 52 L.Ed.2d 324 (1977), the

Court described the criterion of "patent offensiveness" not only as an "underlying question of fact[ ]" to be determined in light of "contemporary community standards," but also as a standard containing a "substantive component." 431 U.S. at 300–01, 97 S.Ct. at 1763. "The kinds of conduct that a jury would be permitted to label as 'patently offensive' ... are the 'hard core' types of conduct suggested by the examples given in *Miller,*" 431 U.S. at 301, 97 S.Ct. at 1763. The Court referred to these kinds of conduct as "substantive conduct" the portrayal of which may be held to be "patently offensive" 431 U.S. at 303, 97 S.Ct. at 1765. Thus in order for a portrayal of sexual conduct to be "patently offensive," as that term has been used by the Supreme Court, at a minimum it must be a depiction, description or representation either of the activities listed in the *Miller* examples or of activities "sufficiently similar" to those activities as to justify similar treatment. Section 43.21(a)(1)(B) of the Texas Statute provides the specificity the Supreme Court requires for the "substantive component."

■ Once this "substantive component" is satisfied, the question becomes whether, as a matter of fact, the portrayal is "patently offensive" in light of "contemporary community standards." The appellant argues that the Supreme Court mandates that a jury is to judge the patent offensiveness of the substantive portrayal against the "tolerance" of the community and not against what the community deems "decent."

The most often cited passages from Supreme Court opinions used to establish "tolerance" as a standard for the community are set out below:

(1) In *Smith v. California,* Justice Harlan in a concurring and dissenting opinion, stated the following with regards to the introduction of evidence in establishing the community standard:

[T]he trier of an obscenity case must take into account 'contemporary community standards,' (citation omitted). This means that, regardless of the elements of the offense under state law, the Four-

teenth Amendment does not permit a conviction ... unless the work complained of is found substantially to exceed the limits of candor set by contemporary community standards. The community cannot, where liberty of speech and press are at issue, condemn that which it *generally tolerates*. (emphasis added).

*Smith v. California,* 361 U.S. 147 at 171, 80 S.Ct. 215 at 228, 4 L.Ed.2d 205 (1959) (concurring and dissenting opinion, J. Harlan). (footnotes omitted).

(2) Justice Burger stated in *Miller* that "[i]t is neither realistic nor constitutionally sound to read the First Amendment as requiring the *people* of Maine or Mississippi accept the public depiction of conduct found *tolerable* in Las Vegas or New York City." (emphasis added). *Miller, supra* 413 U.S. at 32, 93 S.Ct. at 2619. This statement was made in addressing the question of whether there was error in the State's failure to offer evidence of "national standards" or error in the court's charge that the jury consider state community standards. The reference was made in the context of the measurement of community standards on a geographical basis.

The jury in *Miller* was instructed that in determining whether the material "goes substantially beyond customary limits of candor and affronts standards of community *decency*," (emphasis added) *Miller, supra* 413 U.S. at 31, 93 S.Ct. at 2618, it was to apply the standards of the state of California. The Supreme Court did not specifically address itself to the application of the word *decency* in setting a basis for community standards.

(3) In *Smith v. United States* the Court stated that "obscenity is to be judged according to the *average person* in the community, rather than the most prudish or the most *tolerant*." (emphasis added) 431 U.S. 291, at 304, 97 S.Ct. 1756, at 1765, 52 L.Ed.2d 324.

(4) Also in *Smith,* the Court stated that "contemporary community standards must be applied by [the trier of fact] in accordance with [its] own understanding of the *tolerance* of the *average person* in the community...." (emphasis added). 431 U.S. at 305, 97 S.Ct. at 1766.

The clear indication of the Court in these holdings is that the trier of fact is "to draw on his knowledge of the views of the average person in the community or vicinage from which he comes for making the required determination, just as he is entitled to draw on his knowledge of the propensities of a 'reasonable person' in other areas of the law." *Hamling v. United States,* 418 U.S. 87 at 104–105, 94 S.Ct. 2887 at 2900–2901, 41 L.Ed.2d 590 (1974). The Court has not mandated the use of the word "tolerance" nor has it excluded a definition in terms of "decency" as used in the Texas statute. As long as the fact finder does not employ personal subjective reactions and uses as one factor that which is "tolerated" by the average person in determining a contemporary community standard of "decency," the Texas statute is not overly broad. Clearly though, in applying a rule based upon community standards, the court is seeking to prevent the mere subjective reactions of the trier of fact from being used as the standard in judging obscenity. The purpose for the use of a community standards test is to distinguish personal or abberant views from the generalized view of the community at large. *Hamling,* 418 U.S. at 107, 94 S.Ct. at 2902.

The term "decency" as used in the Texas statute does not impermissibly expand the parameters of the *Miller* standard beyond the scope contemplated by the decisions of the Supreme Court. *Accord Garcia v. State,* 633 S.W.2d 611 (Tex.App.—El Paso 1982); *Cf. Andrews v. State,* 639 S.W.2d 4 (Tex.App.—Houston [1st Dist.] 1982) (court's charge defining patently offensive in terms of statute is reversible error). A society has a right to protect itself from destructive influences so long as these destructive influences are constitutionally restrained. The corrupting and degenerative force of obscenity is such that it can be reasonably regulated. The Supreme Court has recognized this, and its rulings clearly provide a community the right to protect

**654**

itself. The Texas statute has done this within the parameters set forth by the United States Supreme Court.

As to appellant's claim of vagueness, we quote from *Miller* wherein it was held:

Many decisions have recognized these terms of obscenity statutes are not precise. [Footnote omitted.] This court, however, has consistently held that lack of precision is not itself offensive to the requirements of due process. '... [T]he Constitution does not require impossible standards'; all that is required is that the language 'conveys sufficiently definite warning as to prescribed conduct when measured by common understanding and practices....' [citations omitted]. These words, applied according to the proper standard for judging obscenity, already discussed, give adequate warning of the conduct proscribed and mark '... boundaries sufficiently distinct for judges and juries to fairly administer the law. ... That there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is no sufficient reason to hold the language too ambiguous to define a criminal offense.' [citations omitted].

413 at 28, n. 10, 93 S.Ct. at 2617 n. 10.

The Texas statute is drawn substantially from *Miller.* Appellant's claim of a lack of due process in the statute under which he is charged is overruled. *See Goocher v. State,* 633 S.W.2d 860 (Tex.Crim.App.1982). *Cf.* Changing Standards of Obscenity in Texas, 34 Sw.L.J. 1201 (1981).

The conviction is affirmed.