

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0478-19

### EX PARTE LEONARDO NUNCIO, Appellant

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FOURTH COURT OF APPEALS
### WEBB COUNTY

**WALKER, J., delivered the opinion of the Court, in which HERVEY, RICHARDSON, YEARY, and NEWELL, JJ., joined. KELLER, P.J., and KEEL, SLAUGHTER, and McCLURE, JJ., concurred in the result.**

## O P I N I O N

Section 42.07(a)(1) of the Penal Code, the obscene harassment statute, makes it an offense for a person with the specific intent to harass, annoy, alarm, abuse, torment, or embarrass another to initiate communication and, in the course of the communication, make a comment, request, suggestion, or proposal that is "obscene." TEX. PENAL CODE Ann.§ 42.07(a)(1). Appellant argues that this statute is unconstitutionally vague and overbroad in violation of the First Amendment to the United States Constitution.

We find that § 42.07(a)(1) is a content-based regulation of speech implicating the First

Amendment. We further find that § 42.07(a)(1) is potentially overbroad by its incorporation of the definition of "obscene" under § 42.07(b)(3). However, we conclude that Appellant's overbreadth challenge fails because he does not attempt to make the required showing that a substantial amount of protected speech is affected by the statute, beyond its plainly legitimate sweep. Finally, we hold that § 42.07(a)(1) is not unconstitutionally vague under the First Amendment. We affirm the judgment of the court of appeals.

## I — Background

Leonardo Nuncio, Appellant, was charged with violating Penal Code § 42.07(a)(1), the obscene harassment statute, which provides:

(a)     A person commits an offense if, with intent to harass, annoy, alarm, abuse, torment, or embarrass another, the person:

(1)     initiates communication and in the course of the communication makes a comment, request, suggestion, or proposal that is obscene[.]

(b)     In this section:

(3)     "Obscene" means containing a patently offensive description of or a solicitation to commit an ultimate sex act, including sexual intercourse, masturbation, cunnilingus, fellatio, or anilingus, or a description of an excretory function.

TEX. PENAL CODE Ann. § 42.07(a)(1), (b)(3). Appellant filed a pre-trial application for writ of habeas corpus on the basis that the statute is unconstitutionally vague and overbroad under the First Amendment. The trial court denied Appellant's habeas corpus application, and the court of appeals affirmed. *Ex parte Nuncio*, 579 S.W.3d 448, 451–52 (Tex. App.—San Antonio 2019). The court of appeals, accepting the State's appellate argument that § 42.07(a)(1) restricted obscenity proscribable under the First Amendment, held that the statute is not overbroad. *Id.* at 454, 456. As for Appellant's

vagueness challenge, the court of appeals found that the statute's use of "another" is not unconstitutionally vague. *Id.* at 457. The "another" that the defendant must intend to harass is the same person that the defendant initiates communication with and to whom the defendant makes the obscene comment. *Id.*

Justice Rodriguez dissented. *Id.* at 458 (Rodriguez, J., dissenting). She agreed with the panel majority that § 42.07(a)(1) is not unconstitutionally overbroad because it proscribes obscenity not protected by the First Amendment. *Id.* However, she believed that § 42.07(a)(1) suffers from the same issues that plagued the "stalking" provision of the 1993 harassment statute which we held was unconstitutionally vague on its face in *Long v. State*. *Id.* at 459 (discussing *Long v. State*, 931 S.W.2d 285, 297 (Tex. Crim. App. 1996)). Justice Rodriguez additionally agreed with Appellant that "another" is vague because "the person receiving" the obscene communication might not necessarily be the same person which the defendant intends to harass. *Id.*

We granted Appellant's petition for discretionary review, which raises four grounds challenging § 42.07(a)(1) as unconstitutionally vague and overbroad.[1]

---

[1] Specifically, Appellant's grounds are:

1. Justice Rodriguez's dissent contains the same criticisms of the challenged statute that were addressed in 1983 by the U.S. Fifth Circuit Court of Appeals in Kramer v. Price. Kramer v. Price struck down the previous version of Penal Code § 42.07. The defects described in Justice Rodriguez's dissent and in Kramer v. Price have not been resolved.

2. The Fourth Court of Appeals' decision, and the text of the challenged statute depart from accepted social norms and common understandings of the meaning of the word "harassment." The Fourth Court's majority opinion, and the challenged statute, risk the criminalization of conduct that would not generally be considered 'criminal' by people of ordinary intelligence. Further, because of this disconnect between common sense and the text of the statute, the challenged statute chills emotional speech, hyperbolic speech, metaphor, sharply critical speech and sexual overtures; TRAP § 66.3 (f).

## II — Preservation of Error

Before we address the First Amendment questions before us, we begin with the threshold argument posed by the State, via the State Prosecuting Attorney's office, that Appellant failed to present a proper argument challenging § 42.07(a)(1) as constitutionally overbroad before the trial court.[2] The State argues that, although Appellant recited overbreadth law and claimed that the statute was overbroad, he failed to present a complete—"true"—overbreadth claim, thus failing to preserve the issue for appeal.[3] The State takes the position that Appellant's overbreadth claims in the trial court were incomplete, failed to apply the appropriate tests, and primarily served his vagueness claims which formed the bulk of his argument.

As we have oft-stated:

> Preservation of error is a systemic requirement on appeal. If an issue has not been preserved for appeal, neither the court of appeals nor this Court should address the merits of that issue. Ordinarily, a court of appeals should review preservation of error on its own motion, but if it does not do so expressly, this Court can and should do so when confronted with a preservation question.

---

3.    Texas Courts' attempts to construe § 42.07 have led to baffling decisions that show no discernible logic or pattern that can be followed. The resulting authorities constitute a case by case evaluation of whether the subject speech makes reference to an "ultimate sex act." As a result of this lack of clear guidance, the statute is overly broad and chills too much speech.

4.    The Court of Appeals should settle this important question because the statute unconstitutionally delegates prosecutorial decision-making and because the potential chilling effect is broad, TRAP § 66.3(b).

[2] At the court of appeals, the State, represented by the Webb County District Attorney's office, did not raise preservation issues and instead focused on the merits of First Amendment vagueness and overbreadth. *See* State's Br. 8–15, *Ex parte Nuncio*, 579 S.W.3d 448 (Tex. App.—San Antonio 2019) (No. 04-18-00127-CR).

[3] State's Br. on the Merits 8, 11.

*Ford v. State*, 305 S.W.3d 530, 532–33 (Tex. Crim. App. 2009); *see also Wilson v. State*, 311 S.W.3d 452, 473–74 (Tex. Crim. App. 2010); *Blackshear v. State*, 385 S.W.3d 589, 590–91 (Tex. Crim. App. 2012); *Darcy v. State*, 488 S.W.3d 325, 327–28 (Tex. Crim. App. 2016); *Wood v. State*, 560 S.W.3d 162, 165 n.8 (Tex. Crim. App. 2018).

To preserve a complaint for appellate review, there must be a timely, specific objection and a ruling by the trial court. TEX. R. APP. P. 33.1(a). "To be timely, a complaint must be made as soon as the grounds for complaint [are] apparent or should be apparent." *Wilson v. State*, 7 S.W.3d 136, 146 (Tex. Crim. App. 1999). To be sufficiently specific, an objection need not employ "hyper-technical or formalistic . . . words or phrases[.]" *Golliday v. State*, 560 S.W.3d 664, 670 (Tex. Crim. App. 2018) (internal citations omitted). Instead,

> [t]o avoid forfeiting a complaint on appeal, the party must "let the trial judge know what he wants, why he thinks he is entitled to it, and to do so clearly enough for the judge to understand him at a time when the judge is in the proper position to do something about it."

*Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009); *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992). "This gives the trial judge and the opposing party an opportunity to correct the error." *Pena*, 285 S.W.3d at 464 (citing *Reyna v. State*, 168 S.W.3d 173, 179 (Tex. Crim. App. 2005)). Accordingly, a "general or imprecise objection may be sufficient to preserve error for appeal, but only if the legal basis for the objection is *obvious* to the court and to opposing counsel." *Buchanan v. State*, 207 S.W.3d 772, 775 (Tex. Crim. App. 2006) (emphasis in original). "Usually, for a complaint to be obvious," there will "have been statements or actions on the record that clearly indicate what the judge and opposing counsel understood the argument to be." *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012).

In his pre-trial application for writ of habeas corpus, Appellant specifically "invoke[d] the overbreadth doctrine and challenge[d] the relevant subsections of § 42.07 pursuant to said challenge. Applicant argue[d] that Texas Penal Code § 42.07(a)(1) and (b)(3) operate together to implicate the First Amendment and that they are unconstitutionally . . . overbroad."[4] As the State concedes, Appellant cited appropriate overbreadth law,[5] showing the legal basis for the ruling sought.[6] Appellant at the very least attempted to make overbreadth arguments; he presented several different examples of speech that would be prohibited by the statute but should be—in his estimation—protected.[7] In other words, Appellant at least contended that the statute swept up a substantial amount of protected speech beyond its plainly legitimate sweep. *See United States v. Williams*, 553 U.S. 285, 292 (2008). At this juncture, we need not dwell on how well Appellant made his overbreadth claims in the trial court. Whatever criticisms the State may have about the quality or depth of Appellant's overbreadth argument and whether Appellant conflated overbreadth with other First Amendment doctrines, insofar as preservation of error is concerned, it is clear that Appellant argued that the statute was overbroad.

Furthermore, there is no doubt that the State, via the Webb County District Attorney's office, understood the complaint. The State's written response noted "Applicant argues that the statute is

---

[4] Clerk's R. 25.

[5] State's Br. on Merits 8 ("[A]ppellant recited overbreadth law in the trial court[.]").

[6] Clerk's R. 20–22.

[7] *See id.* at 89 ("The statute restricts and chills emotional speech of a nature that is very common in social interactions—especially heated social interaction."), 90–93 (an argument in a nightclub between an ex-boyfriend and ex-girlfriend), 93–95 (revelations by a jilted ex-lover of a politician), 100–01 (metaphor, hyperbole, rumor mongering, and gossip).

unconstitutional as applied and *per se* on First Amendment grounds and in regards to overbreadth[.]"[8] The response included an entire section dedicated to specifically arguing that "The Statute Is Not Overbroad."[9]

Finally, the trial court understood the objection and ruled on it. The trial court's order noted that the court "considered the merits" of Appellant's "request that the relevant portions of the subject statute as described in the application for habeas corpus relief, including Texas Penal Code § 42.07(a) and (a)(1) and (b)(3) be struck down as constitutionally and legally invalid, overbroad[.]"[10] The court was "of the opinion that said motion should be and is hereby DENIED on its merits."[11]

The arguments Appellant presented in his pre-trial application for writ of habeas corpus were patently sufficient to make both the trial court and the State aware of his contention that § 42.07(a)(1) was unconstitutionally overbroad under the First Amendment. We find that Appellant's objection had the necessary specificity to preserve the issue for appeal.

### III — § 42.07(a)(1) Regulates Speech, and *Scott v. State* Does Not Apply

The Free Speech Clause of the First Amendment to the United States Constitution provides that "Congress shall make no law . . . abridging the freedom of speech . . . ." U.S. CONST. amend. I. Although the amendment refers to "Congress," it "applies to the States under the Due Process Clause of the Fourteenth Amendment." *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 489 n.1 (1996); *Gitlow v. New York*, 268 U.S. 652, 666 (1925).

---

[8] Clerk's R. 139.

[9] *Id.* at 140–41.

[10] *Id.* at 154.

[11] *Id.*

The State argues that § 42.07(a)(1) does not implicate the First Amendment because the statute does not regulate speech. The State relies upon our opinion in *Scott v. State*, 322 S.W.3d 662, 669 (Tex. Crim. App. 2010), *disavowed on other grounds by Wilson v. State*, 448 S.W.3d 418, 423 (Tex. Crim. App. 2014). In *Scott*, the defendant argued that § 42.07(a)(4), the telephone harassment statute, was unconstitutionally vague and overbroad under the First Amendment. *Id.* at 665. Section 42.07(a)(4) provided:

> (a)    A person commits an offense if, with intent to harass, annoy, alarm, abuse, torment, or embarrass another, he:
>
> (4)    causes the telephone of another to ring repeatedly or makes repeated telephone communications anonymously or in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another[.]

Act of May 24, 1973, 63d Leg., R.S., ch. 399, § 1, sec. 42.07, 1973 Tex. Gen. Laws 883, 956–57 (amended 2001) (current version at TEX. PENAL CODE Ann. § 42.07(a)(4)). We concluded that the 2001 version of § 42.07(a)(4) is not susceptible to being considered communicative conduct protected by the First Amendment because the statute criminalizes harassing conduct that, although it may include spoken words, is essentially noncommunicative. *Scott*, 322 S.W.3d at 669–70. Furthermore, we determined that "persons whose conduct violates § 42.07(a)(4) will not have an intent to engage in the legitimate communication of ideas, opinions, or information; they will have only the intent to inflict emotional distress for its own sake." *Id.* at 670. We held that § 42.07(a)(4) does not implicate the First Amendment. *Id.* at 669. Accordingly, Scott failed to show it was unconstitutionally vague on its face. *Id.* at 670–71.

According to the State, *Scott* held that intentional harassment is not speech implicating the First Amendment. The State argues that § 42.07(a)(1) prohibits intentional harassment the same as

§ 42.07(a)(4), and thus (a)(1) does not implicate the First Amendment. Appellant, for his part, responds that *Scott* should not apply because it is "overdue for being put out to pasture."[12] Appellant contends that the rationale we employed in *Scott* was unsound because it relied upon dicta,[13] and *Scott* has been undermined by the U.S. Supreme Court's opinions in *Stevens* and *Alvarez*, among others.[14]

We agree with Appellant that *Scott* is not controlling in this case but not for the reasons he suggests. The conduct regulated by § 42.07(a)(4) that we recognized in *Scott* as noncommunicative is completely unlike the conduct regulated by (a)(1). Section 42.07(a)(4)'s prohibited conduct consists of:

- causing the telephone of another to ring repeatedly,

- making repeated telephone communications anonymously, or

- making repeated telephone communications in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another.

TEX. PENAL CODE Ann. § 42.07(a)(4). As we explain in *Ex parte Sanders*, No. PD-0469-19, — S.W.3d — (Tex. Crim. App. 2021), this is conduct that is not inherently expressive. *See Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 66 (2006) (First Amendment protection extends "only to conduct that is inherently expressive.").

---

[12] Pet'r's Reply Br. 25.

[13] *Id.* at 24 (criticizing *Scott*'s citation to *Cohen v. California*, 403 U.S. 15 (1971)).

[14] *Id.* at 25 (citing *United States v. Stevens*, 559 U.S. 460 (2010); *United States v. Alvarez*, 567 U.S. 709 (2012); *Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786 (2011); *and Reed v. Town of Gilbert*, 576 U.S. 155 (2015)).

Appellant's counsel raises a similar argument in *Ex parte Sanders*, No. PD-0469-19, — S.W.3d — (Tex. Crim. App. 2021). We address the merits of this argument in our opinion in *Sanders*.

The same cannot be said, however, of the conduct prohibited by § 42.07(a)(1). That conduct consists of initiating communication and making a comment, request, suggestion, or proposal that is obscene in the course of the communication. *See* TEX. PENAL CODE Ann. § 42.07(a)(1). While initiating communication may not be, itself, expressive—such as merely approaching another person before speaking to that person—there is no doubt that making a comment, making a request, making a suggestion, or making a proposal is pure speech.

Furthermore, as a general rule, laws that "distinguish favored speech from disfavored speech on the basis of the ideas or views expressed are content-based[,]" whereas "laws that confer benefits or impose burdens on speech without reference to the ideas or views expressed are . . . content-neutral." *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 643 (1994); *Ex parte Thompson*, 442 S.W.3d 325, 345 (Tex. Crim. App. 2014). If it is necessary to look at the content of the speech to decide if the speaker violated the law, the regulation is content-based. *Thompson*, 442 S.W.3d at 345; *Ex parte Lo*, 424 S.W.3d 10, 15 n.12 (Tex. Crim. App. 2013).

Here, § 42.07(a)(1) penalizes the making of comments, requests, suggestions, or proposals that are "obscene." TEX. PENAL CODE Ann. § 42.07(a)(1). Those comments, requests, suggestions, or proposals are "obscene" if they contain a patently offensive description of, or a solicitation to commit, an ultimate sex act. *Id.* § 42.07(b)(3). Ultimate sex acts include sexual intercourse, masturbation, cunnilingus, fellatio, or anilingus, or a description of an excretory function. *Id.* To determine whether a person has made a comment that is obscene, it is necessary to examine the content of the comment for any descriptions of ultimate sex acts, for any solicitations to commit ultimate sex acts, and for any descriptions of excretory functions. If the comment does contain a description of an ultimate sex act, it is also necessary to examine the content of said description to

determine whether it is patently offensive, offensive but not patently so, or not offensive at all.[15]

Because one must examine the contents of a person's communication to determine if it meets § 42.07(b)(3)'s definition of "obscene," it is inescapable that § 42.07(a)(1) it is a content-based regulation of speech.

We therefore disagree with the State that *Scott*'s holding, that the conduct regulated by § 42.07(a)(4) is noncommunicative and does not implicate the First Amendment, can be applied to § 42.07(a)(1). Not only is the conduct completely different between the two statutes, (a)(1) plainly implicates the First Amendment.[16]

Conversely, the only thing § 42.07(a)(1) and (a)(4) have in common is the *mens rea* of the offense. There is no similarity in the conduct. *Scott*'s holding, that § 42.07(a)(4) does not implicate the First Amendment because the conduct it prohibits is noncommunicative, does not apply to § 42.07(a)(1). Section 42.07(a)(1) regulates speech and implicates the First Amendment.

## V — Overbreadth

Having determined that the First Amendment is implicated, we now turn to Appellant's argument that § 42.07(a)(1) is unconstitutionally overbroad. As we explained in *Ex parte Perry*:

> Under the First Amendment's "overbreadth doctrine," a law may be declared unconstitutional on its face, even if it might have some legitimate applications. A challenge to a statute under the overbreadth doctrine is a facial challenge that can be

---

[15] At this point in time, we do not mean to authoritatively construe § 42.07(b)(3) in such a way that "patently offensive" applies to only descriptions of ultimate sex acts, and not to solicitations to commit ultimate sex acts or to descriptions of excretory functions. Whether such a construction is appropriate must wait for a case properly raising the issue.

[16] In contrast, the conduct covered by § 42.07(a)(4) is similar to that covered by (a)(7), the electronic harassment statute, which we address in our opinions in *Ex Parte Sanders*, No. PD-0469-19, — S.W.3d — (Tex. Crim. App. 2021), and *Ex parte Barton*, No. PD-1123-19, — S.W.3d — (Tex. Crim. App. 2021).

brought in a pretrial habeas application, and the denial of relief may be immediately appealed.

The overbreadth of a statute must be "substantial, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep." The statute must prohibit a substantial amount of protected expression, and the danger that the statute will be unconstitutionally applied must be realistic and not based on "fanciful hypotheticals." The person challenging the statute must demonstrate from its text and from actual fact "that a substantial number of instances exist in which the Law cannot be applied constitutionally."

*Ex parte Perry*, 483 S.W.3d 884, 902 (Tex. Crim. App. 2016).

With these principles in mind, we examine the literal text of § 42.07(a)(1). *See Williams*, 553 U.S. at 293 ("The first step in overbreadth analysis is to construe the challenged statute[.]"); *Wagner v. State*, 539 S.W.3d 298, 306 (Tex. Crim. App. 2018). Again, the statute provides:

(a)  A person commits an offense if, with intent to harass, annoy, alarm, abuse, torment, or embarrass another, the person:

(1)  initiates communication and in the course of the communication makes a comment, request, suggestion, or proposal that is obscene[.]

TEX. PENAL CODE Ann. § 42.07(a)(1). The statute only prohibits comments, requests, suggestions, or proposals that are "obscene," and therefore the overbreadth issue turns upon the definition of "obscene" and whether speech under that definition is obscenity proscribable under the First Amendment.

## VI — "Obscene" Under § 42.07(b)(3)

Section 42.07(b)(3) provides:

(3)  "Obscene" means containing a patently offensive description of or a solicitation to commit an ultimate sex act, including sexual intercourse, masturbation, cunnilingus, fellatio, or anilingus, or a description of an excretory function.

TEX. PENAL CODE Ann. § 42.07(b)(3).

The court of appeals rejected Appellant's overbreadth challenge because, in the court of appeals's estimation, § 42.07(b)(3) defines "obscene" more narrowly than the Supreme Court's standard for obscenity laid out in *Miller v. California*. *Nuncio*, 579 S.W.3d at 455 (discussing *Miller v. California*, 413 U.S. 15, 24 (1973)). As a result, and because obscenity is a category of speech traditionally outside of the protection of the First Amendment, the court of appeals concluded that § 42.07(a)(1) and (b)(3) prohibited only unprotected speech—thus, the appellate court did not find First Amendment overbreadth. *Id.* at 456. The State similarly argues that § 42.07(a)(1) regulates *Miller* obscenity, whereas Appellant argues the court of appeals erred because "obscene" under § 42.07(b)(3) is not narrower than the standard for First Amendment obscenity as laid out in *Miller*.[17]

We agree with Appellant. In *Miller v. California*, the Supreme Court stated the now-familiar standard for obscenity outside the protection of the First Amendment:

> The basic guidelines for the trier of fact must be: (a) whether "the average person, applying contemporary community standards" would find that the work, taken as a whole, appeals to the prurient interest . . . (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.

*Miller*, 413 U.S. at 24 (internal citations omitted). The Supreme Court left it to the states to specifically define patently offensive depictions or descriptions of sexual conduct, but it offered "a few plain examples":

> (a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated.

---

[17] Appellant also argues that *Miller* itself should be overruled due to changing technology. Even if there was any merit to Appellant's argument, the power to overrule *Miller* is outside the authority of this Court. "The ultimate authority on federal constitutional law is the U.S. Supreme Court." *Ex parte Evans*, 537 S.W.3d 109, 111 (Tex. Crim. App. 2017). "The Supreme Court's pronouncements about federal constitutional law are binding on this Court." *Id.*

(b) Patently offensive representation or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals.

*Id.* at 25.[18] But is "obscene" under § 42.07(b)(3) narrower than *Miller* obscenity? The court of appeals thought so. *Nuncio*, 579 S.W.3d at 455. If that conclusion was correct, then speech that is

_____

[18] The *Miller* standard has been codified as part of a different statute—Penal Code Chapter 43, Subchapter B—the Texas obscenity statute. *See Andrews v. State*, 652 S.W.2d 370, 378 (Tex. Crim. App. 1983) ("When the Legislature enacted the present Texas obscenity statute, it was attempting to comply with the Supreme Court decision of *Miller v. California*"); *Shelton v. State*, 640 S.W.2d 649, 654 (Tex. App.—Houston [14th Dist.] 1982, no pet.) ("The Texas statute is drawn substantially from *Miller*."); *Red Bluff Drive-In, Inc. v. Vance*, 648 F.2d 1020, 1026 (5th Cir. 1981) ("Section 43.21(a)(1) defines obscenity with language drawn directly from the Supreme Court's landmark *Miller* decision.").

The obscenity statute provides:

> (1) "Obscene" means material or a performance that:
>
> (A) the average person, applying contemporary community standards, would find that taken as a whole appeals to the prurient interest in sex;
>
> (B) depicts or describes:
>
> (I) patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated, including sexual intercourse, sodomy, and sexual bestiality; or
>
> (ii) patently offensive representations or descriptions of masturbation, excretory functions, sadism, masochism, lewd exhibition of the genitals, the male or female genitals in a state of sexual stimulation or arousal, covered male genitals in a discernibly turgid state or a device designed and marketed as useful primarily for stimulation of the human genital organs; and
>
> (C) taken as a whole, lacks serious literary, artistic, political, and scientific value.

TEX. PENAL CODE Ann. § 43.21(a)(1).

"obscene" under § 42.07(b)(3) is simply a subset of unprotected obscenity and thus unprotected as well. On the other hand, if § 42.07(b)(3) obscenity is distinct from or more expansive than *Miller* obscenity, then the speech defined by § 42.07(b)(3) would include protected speech.

Considering the differences between the definition of obscenity under *Miller* and the definition of "obscene" under § 42.07(b)(3), it is self-apparent that § 42.07(b)(3) reaches speech beyond the scope of *Miller*. Section 42.07(a)(1), ostensibly intended to prohibit obscene comments—and believed by the court of appeals and the State to prohibit obscene comments under the First Amendment *Miller* definition—would prohibit not only obscene comments under *Miller* but also comments that are not obscene under *Miller*. Although the comments contain patently offensive descriptions of ultimate sex acts, they do not necessarily appeal to the prurient interest in sex as judged by an average person applying contemporary community standards, and they do not necessarily lack serious literary, artistic, political, or scientific value.

We conclude, therefore, that obscenity defined by § 42.07(b)(3) and restricted by § 42.07(a)(1) includes both unprotected speech and protected speech. However, that is not the end of our analysis. Simply because a statute covers protected speech does not necessarily mean the statute is overbroad under the First Amendment. An overbroad statute covers a *substantial* amount of protected speech outside of its plainly legitimate sweep. Is the amount of protected speech affected by § 42.07(a)(1), beyond its plainly legitimate sweep, "substantial"?

Appellant's brief, in its section titled "**THE STATUTE'S OVERBREADTH IS REAL AND SUBSTANTIAL**" argues that:

> Because section 42.07(a)(1) is a content-based restriction on speech, it is subject to strict scrutiny, and is presumptively invalid. The State has the burden of overcoming this presumption by showing that the overbreadth is not substantial, and cannot do

so.[19]

It is true that a content-based restriction of protected speech is presumptively invalid, and the State bears a burden; however, that burden is for demonstrating that the restriction passes strict scrutiny. The State must show the restriction "is justified by a compelling government interest and is narrowly drawn to serve that interest." *Entm't Merchs. Ass'n*, 564 U.S. at 799; *Lo*, 424 S.W.3d at 15. Appellant's issue before us is whether § 42.07(a)(1) is unconstitutionally overbroad, not whether § 42.07(a)(1) fails strict scrutiny. An overbreadth challenge does not involve the strict scrutiny standard. *See Perry*, 483 S.W.3d at 902. To succeed in an overbreadth challenge, the person challenging the statute "must demonstrate from the text [of the law] and from actual fact that a substantial number of instances exist in which the Law cannot be applied constitutionally." *New York State Club Ass'n v. City of New York*, 487 U.S. 1, 14 (1988); *Perry*, 483 S.W.3d at 902. The burden of persuasion belongs to Appellant.

Due to Appellant's mistaken belief that the State has the burden to show that a statute is not overbroad, he makes no attempt to fulfill his burden to show that a substantial number of instances exist in which § 42.07(a)(1) cannot be applied constitutionally. And the State, understandably, offers no rebuttal argument that the amount is not substantial. Appellant's overbreadth argument is inadequately briefed.

Application of the overbreadth doctrine is "manifestly strong medicine" to be employed "sparingly and only as a last resort." *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973); *Thompson*, 442 S.W.3d at 349. Accordingly, in the absence of a showing that there is a realistic danger the statute will be unconstitutionally applied, we cannot and will not hold that § 42.07(a)(1) is

---

[19] Pet'r's Br. 35.

unconstitutionally overbroad. On the other hand, because § 42.07(b)(3)'s definition of "obscene" includes both obscenity under the constitutional *Miller* standard as well as some unknown amount of indecent speech that is not necessarily obscenity, we decline to hold, at this juncture, that § 42.07(a)(1) is not overbroad. The answer to the overbreadth question will have to wait for another day.[20]

## VI — Vagueness

We finally address whether § 42.07(a)(1), regulating the making of obscene comments and thus implicating the First Amendment, is unconstitutionally vague on its face.

Generally, "in addressing a vagueness challenge," courts are to "consider whether the statute is vague as applied to a defendant's conduct before considering whether the statute may be vague as applied to the conduct of others." *Wagner*, 539 S.W.3d at 314. "'A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others. A court should therefore examine the complainant's conduct before analyzing other hypothetical applications of the law.'" *Id.* (quoting *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982)).

This general rule gives way when freedom of speech under the First Amendment is involved. "[W]hen a vagueness challenge involves First Amendment considerations, a criminal law may be held facially invalid even though it may not be unconstitutional as applied to the defendant's conduct." *State v. Doyal*, 589 S.W.3d 136, 144 (Tex. Crim. App. 2019) (quoting *Long*, 931 S.W.2d

---

[20] Furthermore, a proper showing of "substantial" must be judged relative to the statute's plainly legitimate sweep. *Williams*, 553 U.S. at 292. Alongside *Miller* obscenity, speech that is indecent but not obscene—protected speech—could very well form part of that plainly legitimate sweep, if such coverage satisfies strict scrutiny, a question that is not before this Court.

at 288). A law implicating First Amendment freedoms may be found facially vague without "a showing that there are no possible instances of conduct clearly falling within the statute's prohibitions." *Id.* at 145.

Because § 42.07(a)(1) is a content-based regulation of speech implicating the First Amendment, it is susceptible to a facial vagueness challenge. *Contra Scott*, 322 S.W.3d at 670–71 (finding vagueness challenge to § 42.07(a)(4), which does not implicate the First Amendment, must be made as-applied and holding that Scott's facial challenge fails).

Appellant's vagueness argument specifically targets the terms "ultimate sex act" and "patently offensive" used in § 42.07(b)(3). Regarding Appellant's contention that "ultimate sex act" is vague, he points to *Miller*'s requirement that the sexual conduct be "specifically defined by the applicable state law[.]" *Miller*, 413 U.S. at 24. Appellant charges that the list of ultimate sex acts in § 42.07(b)(3)'s definition of obscene is non-exclusive and therefore incomplete. Appellant argues that, as a result, the statute fails to specifically define the sexual conduct. Appellant acknowledges that we have considered § 42.07(b)(3)'s "ultimate sex act" in *Pettijohn* and *Lefevers*, but Appellant says that we "struggled" with it.[21] *See Pettijohn v. State*, 782 S.W.2d 866, 868–69 (Tex. Crim. App. 1989); *Lefevers v. State*, 20 S.W.3d 707, 712 (Tex. Crim. App. 2000).

We disagree that we "struggled" in *Pettijohn* and in *Lefevers*. In *Pettijohn*, the defendant was convicted for violating § 42.07(a)(1) when he sent a letter accusing the complainant of "making sexual advances to little boys and molesting little children" to the complainant's employer. *Pettijohn*, 782 S.W.2d at 867. The issue before this Court was whether those comments were obscene as descriptions of "ultimate" sex acts. *See id.* at 868.

---

[21] Pet'r's Br. 22.

Although § 42.07 did not define "ultimate," we found that the statute's "exemplary list of 'ultimate sex acts'" provided "insight into the meaning in which the legislature intended for the phrase." *Id.* "The statutory examples given are of a very specific nature, describing particular sexual activities[.]" *Id.* We concluded that "the legislature intended the phrase 'ultimate sex act' as used within the context of the harassment statute to mean something more than [a] general allegation of sexual activity[.]" *Id.* As a result, we held that the letter's accusations that the defendant had been "making sexual advances to little boys" and "molesting little children," while offensive, did not describe ultimate sex acts. *Id.*

In *Lefevers*, the defendant told the complainant "I want to feel your breasts" over the telephone. *Lefevers*, 20 S.W.3d at 708. We concluded that this was not a description of an "ultimate sex act." *Id.* at 712. We reached this conclusion because:

> Our legislature has defined "ultimate sex act," as used in § 42.07, through a non-exclusive list. Using that list, we employ a rule of statutory construction, *ejusdem generis*, to determine what is meant by "ultimate sex act." *Ejusdem generis* holds that "in interpreting general words which follow an enumeration of particular or specific things, the meaning of those general words should be confined to things of the same kind." . . . Such a rule "accomplishes the purpose of giving effect to both the particular and the general words, by treating the particular words as indicating the class, and the general words as extending the provisions of the statute to everything embraced in that class, though not specifically named by the particular words." . . . Although in the instant case, the enumerated list follows the phrase "ultimate sex act," the same rule of construction applies.
>
> As used in § 42.07, the phrase "ultimate sex act" includes "sexual intercourse, masturbation, cunnilingus, fellatio, or anilingus, or a description of an excretory function." Each of the enumerated actions involves genital contact, anal contact, or an excretory function.

*Id.* at 711–12 (internal citations omitted).[22]

---

[22] The State notes that we made a grammatical error by including excretory functions among the list of "ultimate sex acts," but the State thinks the error does not diminish the clarity of *Lefevers*.

Instead of a "struggle," as Appellant puts it, *Pettijohn* and *Lefevers* show a consistent strand—descriptions of "ultimate sex acts" for the purposes of § 42.07(a)(1) and (b)(3) require more than just general averments of sexual activity. As we said in *Lefevers*, "[e]ach of the enumerated actions involves genital contact [or] anal contact," giving "'ultimate sex act' a meaning readily comprehended by the average person." *Lefevers*, 20 S.W.3d at 712. And as the Fifth Circuit explained in *Red Bluff Drive-In, Inc.*, construing "ultimate sexual acts" within the obscenity statute—which includes three examples (sexual intercourse, sodomy, and sexual bestiality)—"[t]hese additional terms [sexual intercourse, sodomy, and sexual bestiality] yield a plain, ascertainable meaning; their addition reduces rather than increases the vagueness of the Texas statute." *Red Bluff Drive-In, Inc.*, 648 F.2d at 1026; TEX. PENAL CODE Ann. § 43.21(a)(1)(B)(i). The same reasoning applies with more force to § 42.07(b)(3) which contains not three but five examples of "ultimate sex acts." Section 42.07(b)(3) tells ordinary people what things are "ultimate sex acts." "Ultimate sex act" has "a meaning readily comprehended by the average person." *Lefevers*, 20 S.W.3d at 712. The term "ultimate sex act" is not vague.

Secondly, Appellant contends that "patently offensive" is vague. Although the term is not defined for the purposes of § 42.07(b)(3), we observe that the obscenity statute contains a definition for "patently offensive" which "means so offensive on its face as to affront current community standards of decency." TEX. PENAL CODE Ann. § 43.21(a)(4). Should the definition of "patently offensive" found in the obscenity statute be applied to "patently offensive" as it is found in § 42.07(b)(3)? We recited the *in pari materia* doctrine in *Cheney*:

State's Br. on the Merits 42 n.152. We agree that this was in error, and we further agree that undoing the error by setting excretory functions separate and apart from the listed ultimate sex acts nevertheless leaves five examples through which the *ejusdem generis* canon would apply.

> It is a settled rule of statutory interpretation that statutes that deal with the same general subject, have the same general purpose, or relate to the same person or thing or class of persons or things, are considered as being in pari materia though they contain no reference to one another, and though they were passed at different times or at different sessions of the legislature.

> In order to arrive at a proper construction of a statute, and determine the exact legislative intent, all acts and parts of acts in pari materia will, therefore, be taken, read, and construed together, each enactment in reference to the other, as though they were parts of one and the same law. Any conflict between their provisions will be harmonized, if possible, and effect will be given to all the provisions of each act if they can be made to stand together and have concurrent efficacy.

*Cheney v. State*, 755 S.W.2d 123, 126 (Tex. Crim. App. 1988) (quoting 53 TEX. JUR. 2d *Statutes* §

186 (1964), at 280–83); *Diruzzo v. State*, 581 S.W.3d 788, 799 (Tex. Crim. App. 2019) (quoting

*Cheney*). "[T]he most important factor in assessing whether two provisions are *in pari materia*" is

whether they have "[s]imilarity of purpose or object[.]" *Burke v. State*, 28 S.W.3d 545, 547 (Tex.

Crim. App. 2000).

The linkage in § 42.07(b)(3) of the phrase "patently offensive" to the term "obscene"

indicates that the Legislature drafted the statute with an eye toward the constitutional definition of

obscenity under *Miller*. *See Lefevers*, 20 S.W.3d at 709 (applying reasoning with regard to "ultimate

sex act"). As mentioned above, the Legislature drafted the obscenity statute (§ 43.21) with an eye

toward the constitutional definition of obscenity under *Miller*. *See Andrews*, 652 S.W.2d at 378;

*Shelton*, 640 S.W.2d at 654; *Red Bluff Drive-In, Inc.*, 648 F.2d at 1026. Sections 42.07(b)(3) and

43.21(a)(1), both defining "obscene" and both drafted with an eye toward *Miller*, have "similarity

of purpose or object" and should be considered *in pari materia*. *Burke*, 20 S.W.3d at 547. "Their

provisions should be construed harmoniously, and in such a way as to render every part efficacious,

to the extent they can plausibly be made to do so." *Diruzzo*, 581 S.W.3d at 799.

Accordingly, the obscenity statute's definition of "patently offensive" should apply to § 42.07(b)(3). We have already held that the obscenity statute's definition of "patently offensive" is not unconstitutionally vague. *Andrews*, 652 S.W.2d at 382 ("We therefore hold that the Texas obscenity statute is not unconstitutional because statutory term "patently offensive" is defined in terms of a community standard of decency. The statute is neither vague nor overbroad because of this fact."). "Patently offensive," as it appears in § 42.07(b)(3), is also not unconstitutionally vague.

Appellant also argues, as he did before the court of appeals, that "another" is vague. The court of appeals panel split on this question, with the majority concluding that the "another" whom the defendant must intend to harass clearly must be the same person to whom the communication was initiated and to whom the obscene comment was made. *Nuncio*, 579 S.W.3d at 457. Justice Rodriguez disagreed, finding that the defendant could intend to harass one person but initiate communications and make obscene comments to a completely different person. *Id.* at 459 (Rodriguez, J., dissenting).

We agree with the panel majority. "Another" as it is used in § 42.07(a) is a reference to the person whom the defendant intends to emotionally harm. The various subsections of § 42.07(a) identify and prohibit different modes of conduct for fulfilling that intent. Although it is *possible* to construe some of the conduct subsections to allow the conduct to be directed at some person other than the intended target of emotional harm, we find such a construction unreasonable. The natural way to read § 42.07(a), and its various conduct subsections, is that the person to whom the conduct is directed must be the same person that the defendant intends to emotionally harm by such conduct. This conclusion is made clear due to the existence of § 42.07(a)(5) which makes it an offense for a person, with the intent to harass, etc., to make a telephone call and intentionally fail to hang up or

disengage the connection. *See* TEX. PENAL CODE Ann. § 42.07(a)(5).

How would a person, intending to harass Person A, accomplish his goal by making a telephone call to Person B and then intentionally fail to hang up? The would-be harasser would have completely failed in his mission. And the Legislature would have completely failed in its mission—making it an offense to call Person B and then intentionally fail to hang up is not rationally related to the legitimate state interest in protecting Person A from harassment. *See Estes v. State*, 546 S.W.3d 691, 697 (Tex. Crim. App. 2018) ("The default, 'general rule' or 'standard' is that state action is 'presumed to be valid' and will be upheld if it is but 'rationally related to a legitimate state interest.'").

Thus, "another" for the purposes of § 42.07(a) must be the target of the particular conduct under subsections (a)(1) through (8) at issue. Where that conduct is § 42.07(a)(1)'s initiating communication and in the course of that communication making an obscene comment, then the person to whom the defendant initiated the communication and to whom the defendant made the obscene comment, request, suggestion, or proposal must be the same person that is the "another" that the defendant intends to harass, annoy, alarm, abuse, torment, or embarrass.

Finally, we address the Fifth Circuit's opinion in *Kramer v. Price*, cited by Appellant's first ground for review, and our opinion in *Long v. State*, cited by Justice Rodriguez's dissenting opinion. *See Kramer v. Price*, 712 F.2d 174 (5th Cir. 1983), *vacated and reh'g granted*, 716 F.2d 284, 285 (5th Cir. 1983), *on reh'g*, 723 F.2d 1164, 1164 (5th Cir. 1984) (per curiam) (en banc); *Long*, 931 S.W.2d 285. Appellant argues that § 42.07(a)(1) suffers from the same vagueness problems identified in those cases, and, as a result, § 42.07(a)(1) is unconstitutionally void for vagueness.

In *Kramer*, the Fifth Circuit Court of Appeals considered the pre-1983 version of the

harassment statute, which provided:

> (a) A person commits an offense if he intentionally:
>
> (1) communicates by telephone or in writing in vulgar, profane, obscene, or indecent language or in a coarse and offensive manner and by this action intentionally, knowingly, or recklessly *annoys* or *alarms* the recipient[.]

*Kramer*, 712 F.2d at 176 (emphasis added). The question before the court was whether "annoy" and "alarm" were vague. *Id.* at 177. To resolve the matter, the Fifth Circuit looked to the following language in the Supreme Court's opinion in *Coates v. City of Cincinnati*:

> Conduct that annoys some people does not annoy others. Thus, the ordinance is vague, not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all.

*Id.* (quoting *Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971)). Because Texas courts had not made any attempt to construe "annoy" and "alarm" to reduce their inherent vagueness, and because Texas courts had "refused to construe the statute to indicate whose sensibilities must be offended[,]" the Fifth Circuit held the Texas harassment statute unconstitutionally vague. *Id.* at 178.

Rehearing en banc was granted and the *Kramer* panel opinion was vacated. *Kramer*, 723 F.2d at 1164. Nevertheless, we relied upon *Kramer* when we were faced with the question of whether the "stalking" provision of the 1993 harassment statute was unconstitutionally vague under the First Amendment. *Long*, 931 S.W.2d at 288–89 (discussing *Kramer*). That statute provided:

> (a) A person commits an offense if, with intent to harass, annoy, alarm, abuse, torment, or embarrass another, he: . . .
>
> > (7)(A) on more than one occasion engages in conduct directed specifically toward the other person, including following that person, that is reasonably likely to *harass, annoy, alarm, abuse, torment, or embarrass* that person;
> >
> > (B) on at least one of those occasions by acts or words threatens to inflict

bodily injury on that person or to commit an offense against that person, a member of that person's family, or that person's property; and

(C) on at least one of those occasions engages in the conduct after the person toward whom the conduct is specifically directed has reported to a law enforcement agency the conduct described by this subdivision.

. . . .

(e) It is an affirmative defense to prosecution under Subsection (a)(7) of this section that the actor was engaged in conduct that consisted of activity in support of constitutionally or statutorily protected rights.

*Id.* at 288 (emphasis added). We found that (a)(7)(A) suffered from the same flaws denounced in *Kramer*, namely, the inclusion of the words "annoy" and "alarm." *Id.* at 289. Furthermore, the addition of "harass," "abuse," "torment," and "embarrass," joined by the disjunctive "or," did nothing to reduce the vagueness of "annoy" and "alarm" and were, themselves, also susceptible to uncertain meaning. *Id.* We ultimately held the 1993 stalking provision unconstitutionally vague on its face. *Id.* at 297.

Does § 42.07(a)(1) suffer from the same problems identified in *Kramer* and in *Long*? While § 42.07(a) as a whole still contains the words "harass, annoy, alarm, abuse, torment, or embarrass," there is a key and critical difference between § 42.07(a)(1) and the statutes found vague in *Kramer* and *Long*. Those former statutes included those terms as part of the prohibited conduct itself. *See Kramer*, 712 F.2d at 176; *Long*, 931 S.W.2d at 288. And in *Long*, although we found those conduct terms to be unconstitutionally vague under the First Amendment, we did not mention any vagueness problem with regard to § 42.07(a)'s recitation of the culpable mental state of the offense, even though the statute then—as it does now—used the very same words and required the defendant have the specific intent to "harass, annoy, alarm, abuse, torment, or embarrass another[.]" *Compare Long*,

931 S.W.2d at 288, *with* TEX. PENAL CODE Ann. § 42.07(a).

This makes sense because vagueness doctrine is concerned with whether ordinary people can determine whether or not *their conduct* is criminal. *See FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012) ("A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of *conduct* that is forbidden or required.") (emphasis added); *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162 (1972) (An ordinance is void for vagueness where it "'fails to give a person of ordinary intelligence fair notice that his contemplated *conduct* is forbidden by the statute[.]'") (emphasis added) (quoting *United States v. Harriss*, 347 U.S. 612, 617 (1954)); *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926) ("That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what *conduct* on their part will render them liable to its penalties is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law; and a statute which either forbids or requires the doing of *an act* in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law.") (emphasis added).

Regardless of whether a person knows his conduct is annoying, he unquestionably would know whether or not he intended to be annoying when he engaged in the conduct.

In contrast to the statutes held invalid in *Kramer* and *Long*, for § 42.07(a)(1) the terms "harass, annoy, alarm, abuse, torment, [and] embarrass" are present for only the *mens rea* of the offense. *See* TEX. PENAL CODE Ann. § 42.07(a)(1). The conduct regulated by § 42.07(a)(1) includes none of those terms. It is, instead, plain and straightforward. *See id.* ("initiates communication and in the course of the communication makes a comment, request, suggestion, or proposal that is

obscene"). There is no lingering *Kramer-Long* problem with regard to § 42.07(a)(1).

Accordingly, we hold that § 42.07(a)(1) is not unconstitutionally vague on its face.

### VII — Conclusion

Section 42.07(a)(1), the obscene harassment statute, is a content-based restriction of speech implicating the First Amendment. The statute restricts speech that is obscene under the First Amendment *Miller* standard and also speech that is not obscene under that standard. As a result, the law prohibits some amount of First Amendment protected speech. However, Appellant fails to carry his burden to show § 42.07(a)(1) is overbroad because he does not show that the amount of protected speech prohibited by the statute is substantial relative to its plainly legitimate sweep.

Further, § 42.07(a)(1) is not unconstitutionally vague on its face. Section 42.07(b)(3) provides examples of what constitute "ultimate sex acts"; "patently offensive" is derived from the *Miller* standard and defined by § 43.21(a)(4); the "another" that the defendant intends to harass is plainly understood to mean the "target of the communication"; and § 42.07(a)(1) does not have any of the vagueness issues identified in *Kramer v. Price* and *Long v. State*.

The judgment of the court of appeals is affirmed.


Delivered: April 6, 2022
Publish